[No. 27-40439-2. Division Two. December 18, 1969.]

DAMASCUS MILK COMPANY, *Appellant,* v. DAVID H. MORRISS *et al., Defendants,* MELVIN R. HIBBARD *et al., Respondents.*

502

*John S. Acker,* for appellant.

*Blair, Thomas, O'Hern & Daheim* and *James E. O'Hern,* for respondent.

PETRIE, J.—Plaintiff, Damascus, foreclosed its mortgage and obtained a judgment lien in the amount of $5,000 plus interest, costs and attorney fees against defendant, Morriss, on October 4, 1966. At a sheriff's sale, conducted on November 25, 1966, pursuant to special execution, plaintiff purchased the property with a bid of $2,000, leaving a deficiency of approximately $3,900. The sale was duly confirmed on December 19, 1966.

Prior to sale, Morriss had filed a declaration of homestead, claiming the property in issue.

On October 6, 1967, Morriss redeemed the property with funds supplied by Hibbard, intervenor herein. Five days later Morriss deeded the property to Hibbard. The good faith of the transaction between Hibbard and Morriss is not challenged by Damascus.

Thereafter, Damascus pursued a series of collection efforts as follows:

1. Requested the Pierce County Clerk to issue a writ of special execution for resale of the land. The clerk refused to issue such a writ. Signature on a purported "Alternate Writ of Mandamus", directing the clerk to issue the special writ or to appear and show cause why the writ should not issue, was refused by a judge of the Superior Court for Pierce County.

2. Obtained a writ of general execution issued by the clerk on November 2, 1967. The sheriff initially levied on

and scheduled for sale the previously mortgaged premises, but returned the writ unsatisfied after having been served with the order from which this appeal has been taken.

3. Filed a petition for appointment of appraisers on December 26, 1967, pursuant to provisions of RCW 6.12.140.

After a hearing on this latter motion, the court issued a detailed memorandum opinion, and subsequently entered an order on March 11, 1968, (1) denying plaintiff's motion for appointment of appraisers; (2) declaring the property in question exempt from execution, and (3) quashing the writ. This appeal followed.

We should note parenthetically, at this point, that other facts render the total situation somewhat more complex than we have briefly outlined herein. After entry of the decree of foreclosure obtained by Damascus, there was a subsequent foreclosure and sale by a "senior" mortgagee in a separate action. Morriss' redemption was from both sales. Further, in December, 1966, Morriss filed a petition in bankruptcy, claiming his homestead. Damascus had notice thereof. Subsequently, the claim of homestead was allowed and set over to Morriss, who received his discharge in bankruptcy. However, we deem it unnecessary to embark upon an exploration of the effect of these additional facts. To do so would tend to becloud the major issues and unduly protract this decision. Their existence, being noted, will hereafter be ignored.

Plaintiff-appellant, Damascus, assigns error to:

1. The refusal of the court to require the clerk to issue the writ of special execution; and

2. The court's denial of the appointment of appraisers.

Damascus' primary contention is that as a result of the redemption of the property by Morriss, "the mortgage is reinstated". Hibbard, on the other hand, while acknowledging that the act of redemption again subjects the land to sale, contends "once that foreclosure and sale took place, the mortgage lien was extinguished, and appellant had remaining only a deficiency judgment, similar in all respects to any other money judgment".

Thus, the real issue is the *quality* of the lien on the property, as it existed after redemption.

It is well settled in Washington that in the case of a general judgment, when a deficiency arises as a result of the sale, and the judgment debtor or his grantee redeems, sufficient of the lien is revived so that the land can again be subjected to resale to satisfy the deficiency. *Ford v. Nokomis State Bank*, 135 Wash. 37, 237 P. 314 (1925). It is also well settled that a homestead exemption, selected in good faith even after judgment but before sale, supersedes and renders unenforceable the lien of a general money judgment under the general execution statutes. *Snelling v. Butler*, 66 Wash. 165, 119 P. 3 (1911); *Kenyon v. Erskine*, 69 Wash. 110, 124 P. 392 (1912).

Furthermore, a former homestead, originally declared after judgment and before sale, in the hands of a subsequent bona fide purchaser for valuable consideration, is free of a general money judgment lien entered against the former owner of the homestead. *Lien v. Hoffman*, 49 Wn.2d 642, 306 P.2d 240 (1957).

Finally, the quality of the lien becomes critical because of the statutory language of RCW 6.12.100:

> The homestead is subject to execution or forced sale in satisfaction of judgments obtained:
>
> . . .
>
> (2) On debts *secured by mortgages on the premises* executed and acknowledged by the husband and wife or by any unmarried claimant.

(Italics ours.)

In other words, if the revived judgment is still a judgment secured by a mortgage, it supersedes the declaration of homestead. If, on the other hand, the judgment has changed its character by reason of the subsequent sale and redemption, it no longer supersedes the declaration of homestead.

When the decree of foreclosure was first obtained, it was obviously—in part, at least—a judgment obtained on a debt secured by a mortgage. When the forced sale was confirmed

by the court, Damascus had remaining an unsatisfied judgment over for the deficiency "similar in all respects to other judgments for the recovery of money," enforceable in the same manner as other judgment liens. RCW 61.12.080.

Did the subsequent redemption by the judgment debtor restore the full quality of the original judgment of foreclosure? To answer this question we must interpret RCW 6.24.160 which provides, in part: "If the judgment debtor redeem, the effect of the sale is terminated and he is restored to his estate."

■ Prior to answering the specific question presented, we deem it appropriate to establish some basic distinctions between redemption from a forced sale under a general judgment lien and redemption from a forced sale under a decree entered in a mortgage foreclosure action. We find those basic distinctions most clearly enunciated in an opinion from our sister state of Oregon over 70 years ago:

> A mortgage is a specific lien, which attaches by virtue of the contract of the parties concerned; but the lien of a judgment is general, and attaches by operation of law, as a sequence of its rendition. Foreclosure is a remedy by which the property covered by the mortgage may be subjected to sale for the payment of the demand for which the mortgage stands as security, and, when the decree is had and the property sold to satisfy it, the mortgagee has obtained all he contracted for; but, if there is also a personal decree against the mortgage debtor, this becomes, from the date of its docketing, a general lien upon his real property, as in case of a judgment; and, if a deficiency remains after the application of the proceeds of the sale of the lands covered by the mortgage, the decree may be enforced by execution, as in ordinary cases: Hill's Ann. Laws, § 417, subd. 2. *The re-sale does not take place under the order for the sale of the specific property covered by the mortgage lien, for that has been exhausted,* but under the personal decree which remains as a deficiency decree against the mortgage debtor after the application of the proceeds arising under the order of sale; and a *redemption will not reinstate the specific mortgage lien, while it will the general lien acquired by the personal decree.*

(Italics ours.) *Flanders v. Aumack,* 32 Ore. 19, 29, 30, 51 P. 447 (1897).

*Flanders* has been cited approvingly in several instances by our Supreme Court. *Ford v. Nokomis State Bank, supra,* wherein our court noted the substantial similarity of the controlling statutes of Oregon and Washington; and *De Roberts v. Stiles,* 24 Wash. 611, 64 P. 795 (1901) relied upon by plaintiff herein.

The comments of the Oregon court in *Flanders* are significant herein not because they were dispositive of the issue then before the court, but because they highlight the two-fold nature of the usual decree of foreclosure rendered under our statutes and the decree actually entered in the case at bar. *See* RCW 61.12.050 through 61.12.100. Those same remarks have been criticized however, as falling short of the mark when the distinctions become critical.

> But we believe the reasoning of the court begs the question. As to the mortgage lien, it appeals to the common law principle that foreclosure exhausts the lien, ignoring the fact that it is competent for the legislature to revive it upon a redemption and that the very question before the court is whether it has not done so.

*See* Durfee and Doddridge, *Redemption from Foreclosure Sale—The Uniform Mortgage Act,* 23 Mich. L. Rev. 825 n.79 at 855 (1925).

 We agree with the statement in *Flanders,* that "redemption will not reinstate the specific mortgage lien, while it will the general lien acquired by the personal decree." The restoration contemplated by the redemption statute (RCW 6.24.160) is not so complete as to restore the full pre-foreclosure status of the parties.

At the time of execution of the mortgage by the mortgagor and acceptance of the same by the mortgagee, the mortgagee looked both to the land and to the credit of the mortgagor for future repayment of the debt unapportioned, however, between the two sources. When the mortgagee purchased the property at the foreclosure sale, leaving a deficiency, his own act determined the extent of the repay-

ment required of the land. The remainder became a personal judgment obligation against the debtor. At the time of sale, the purchasing mortgagee made the apportionment as between the land and the remaining personal credit of the debtor. In effect, the purchasing mortgagee declared to the mortgagor, "I now advise you of the value I place upon the land; you may annul my interest and clear your title in the land by repayment of the amount of the purchase price, subject nevertheless, to the lien of my judgment against you personally." In that sense, by redemption, the effect of the sale is terminated and the debtor's estate—interest in the land—is restored. To hold otherwise, that redemption expanded upon the value placed upon the land by the mortgagee himself would result in a distortion of the salvific significance of the statute. Redemption delivers from bondage; does not impose burdens.

Plaintiff contends, however, that prior interpretations of RCW 6.24.160 by our Supreme Court demand a contrary conclusion. We think not.

In *De Roberts*, it must be remembered, first of all, that the court was citing with approval *Flanders v. Aumack, supra*, and secondly, that the foreclosure sale in *De Roberts* produced no deficiency whatsoever. The estate which was restored in *De Roberts* was the full interest in the land of the original mortgagor. He happened also to own a mortgagee's interest in the land. The holding in *De Roberts* is simply that redemption by a grantee of the original mortgagor still restored the estate of the mortgagor—and thus his mortgage was also restored. *De Roberts* is simply not apposite to the case at bar.

Certain language in *Bollong v. Corman*, 125 Wash. 441, 443, 217 P. 27 (1923) is, admittedly, somewhat more difficult to overcome. In *Bollong*, the court declared:

> The record in this case shows, although the documentary evidence thereof was rejected by the trial court, that defendant Corman redeemed from the mortgage foreclosure sale as a judgment debtor, and in that case *the mortgage lien is retained. De Roberts v. Stiles*, 24 Wash.

611, 64 Pac. 795. Upon such redemption by the judgment debtor [or] his grantee, *the original lien is restored*, and the property may be resold for any balance remaining unpaid of the original judgment, or of any judgment which was a lien upon the property prior to the original sale.

(Italics ours.)

In order to properly appreciate the foregoing language, it is necessary to review the predecessor companion cases to *Bollong. See Buchanan v. Schubach,* 106 Wash. 399, 180 P. 407, 185 P. 583 (1919) and *Bollong v. Corman,* 117 Wash. 336, 201 P. 297 (1921). From a reading of those three cases, it appears that Buchanan, a mortgagee, obtained a decree of foreclosure and judgment against Schubach, the original mortgagor, and Bollong, his grantee, who had assumed and agreed to pay the mortgage. Buchanan purchased at his own foreclosure sale leaving a deficiency judgment against Schubach and Bollong. Corman, a grantee of Bollong, had been made a party to the foreclosure proceedings brought by Buchanan but the respective rights and liabilities existing between Bollong and Corman had not been litigated in *Buchanan.* Corman redeemed from the sale. Bollong subsequently involuntarily satisfied the personal deficiency judgment rendered against him, and thereafter brought an action against Corman and several of Corman's successors in interest, (1) to recover judgment against Corman in the amount necessarily expended in satisfying the deficiency judgment; (2) to be adjudged subrogated to the rights of Buchanan so as to resell the property redeemed by Corman; and (3) to declare the rights of Corman's successors in interest subordinate to Bollong's rights.

In the first *Bollong* case, the Supreme Court determined that the trial court should first determine as a fact whether Corman had merely taken the property subject to the mortgage or had assumed and agreed to pay the same. Upon retrial, the trial court found as a fact that Corman had assumed and agreed to pay the mortgage, but the court refused to subrogate Bollong to the rights of Buchanan and

grant the relief prayed for. On appeal, the court did subrogate and consequently permitted resale on the theory that redemption had restored the lien. Because no homestead rights were involved, the use of the language, "the mortgage lien is retained" and "the original lien is restored" had no real dispositive significance. There was, of course, no need to examine the presale dual nature of a mortgage foreclosure judgment. In any event, the only necessary conclusion derived from *Bollong* is that sufficient of the judgment lien revived such that resale of the land became available as a remedy to the beneficial holder of such a lien, at least in the absence of a validly declared homestead exemption.

We are, therefore, free to and do hold to the distinction enunciated by our sister state of Oregon—that a redempiton by the mortgagor from a forced sale conducted under a writ of special execution issued pursuant to a decree of mortgage foreclosure, revives the general lien acquired by personal nature of the decree (thus permitting resale of the land not subject to a declared homestead right) but does not reinstate the specific mortgage lien.

Therefore, Damascus's lien was not of the quality contemplated by RCW 6.12.100; and a writ of special execution to force a sale was properly denied. Furthermore, at the time Damascus petitioned the court for appointment of appraisers pursuant to RCW 6.12.140, the property was in the hands of a bona fide purchaser for value. The petition for appointment of appraisers was properly denied. *Lien v. Hoffman, supra.*

The order appealed from is affirmed.

ARMSTRONG, C. J., and PEARSON, J., concur.