**In re Jeffrey B. STONE, Debtor.**

**In re Sharon Rae ALBRIGHT, Debtor.**

**In re Doris Ann HAYES, Debtor.**

**Bankruptcy Nos. 88–03102–R3K, 88–02842–R3C and 88–03346–K13.**

United States Bankruptcy Court, E.D. Washington.

Sept. 17, 1990.

---

**1.** 11 U.S.C. § 547(b)(2).

Donald D. Bundy, Yakima, Wash., for Jeffrey Stone.

Robert M. Boggs, Yakima, Wash., for Sharon Albright.

John W. Campbell, Spokane, Wash., for Doris Ann Hayes.

Reed C. Pell, Yakima, Wash., for Jeanna K. Stone.

R. Wayne Bjur, Yakima, Wash., for Donald Albright.

Donald A. O'Neill, Spokane, Wash., for Jack Hayes.

MEMORANDUM OPINION

JOHN A. ROSSMEISSL, Bankruptcy Judge:

*Background*

This trilogy of cases presents various issues regarding a debtor's power under Section 522(f)(1) of the Bankruptcy Code to avoid liens awarded to the debtor's former spouse to secure a property division in the course of a marital dissolution.[1] These cases have been consolidated for argument and decision for the convenience of the court. § 522(f)(1) allows the avoiding of "judicial liens" to the extent such liens impair the debtor's exemptions.

These cases present variations on the same theme. In the case of *In re Jeffrey B. Stone,* the former spouses executed a property settlement agreement that provided for the division of their marital property. Although the settlement agreement was incorporated by reference into the decree, the parties took the additional step of documenting the transaction with a promissory note and a deed of trust. In *In re Sharon Rae Albright,* the spouses also entered into an agreement concerning property settlement, which was incorporated into the dissolution decree. The agreement provided for the transfer of the marital residence to debtor subject to a lien in favor of her former spouse. The parties did not execute additional documentation. Finally, *In re Doris Ann Hayes,* presents the situation where the property division was made by the superior court following a contested dissolution proceeding. The court finds none of these liens may be avoided.

*Jurisdiction*

This court has jurisdiction of this matter pursuant to 28 U.S.C. Section 157. This matter is a core proceeding under 28 U.S.C. Sections 157(b)(2)(B) and (K).

*Facts*

The following is a more detailed discussion of the facts of the specific cases.[2]

*In re Jeffrey B. Stone*

Debtor Jeffrey B. Stone and Jeanna Kay Stone were married in 1981. The Stones

1. All references, except where otherwise noted, are to the Bankruptcy Code, title 11 U.S.C., as amended.

2. The parties offered no evidence at the hearings held in these contested matters. However, the facts of each case were not contested. The facts of each case have been culled from the court's record and from the agreed submissions of counsel.

separated and in November 1987 executed a separation agreement.

The separation agreement provided that the debtor would pay and hold Jeanna harmless for debts in the amount of $39,-820, including the mortgage on the marital residence in the amount of $35,000. The agreement also provided that the debtor would receive the marital residence and that Jeanna would receive a promissory note in the amount of $5,100 secured by a deed of trust on the residence. The note, payable in monthly installments, was interest free. The deed of trust was recorded on November 19, 1987. The agreement contains this language:

> This agreement shall operate as a conveyance by wife to husband and by husband to wife of all items enumerated herein, and henceforth such items shall be the sole and separate property of husband or wife, respectively.

On February 18, 1988 the superior court signed findings of fact, conclusions of law and a decree of dissolution. The superior court found that neither of the parties was seeking an award of maintenance and approved the separation agreement incorporating it into the decree. Neither the decree, the findings, nor conclusions refer to the conveyance of the residence to debtor or the grant of a lien to Jeanna.

Debtor on September 22, 1988 filed a petition for relief under chapter 7 of the Bankruptcy Code. Debtor's schedules listed debts in the amount of $44,400 and total property valued at $38,606. Debtor listed $3,750 as owing to Jeanna. Debtor's schedules indicated that the residence had a value in the amount of $32,500 and that the liens against the house totaled $36,250 ($32,500 first mortgage, plus $3,750 on the second deed of trust owing to Jeanna). The debtor claimed a homestead exemption in the residence in the amount of $3,750 pursuant to § 522(d)(1) of the Code. On October 4, 1988 debtor moved to void Jeanna's lien pursuant to § 522(f) and Jeanna objected.[3]

### *In re Sharon Rae Albright*

The record does not indicate when Donald and Sharon Albright were married. It is uncontested, however, that they acquired their marital residence as community property and that it remained community property until 1983 when their marriage was dissolved. The decree of dissolution was entered in accordance with a property settlement agreement, apparently without trial. Sharon was awarded the marital residence subject to a lien in the amount of $9,000 in favor of Donald. The decree required Sharon to pay Donald's claim in full when the parties' youngest child reached 20 years of age.

By 1988, approximately the time that the youngest child turned 20, the amount of Donald's claim had been reduced to $5,650. In August of that year, Sharon filed bankruptcy under chapter 7. Sharon reported debts in the amount of $17,959 and property with a value of $32,900. The property schedules listed the former marital residence with a fair market value of $30,000. According to the schedules, the residence was subject to a first mortgage in the amount of $6,155. Sharon utilized the exemption allowances provided for by state law, claiming a $30,000 homestead exemption pursuant to RCW 6.13.030. Promptly after filing her bankruptcy petition Sharon

3. The debtor's notice of the motion to void the lien was dated September 20, 1988, and set the last day for filing objections 20 days after the date of the notice (October 10, 1988). The affidavit of mailing reflects that the notice was not mailed until October 4, 1988. Jeanna Stone's objection was filed October 12, 1988. Local Rule 70(d) provides for 20 days notice for most contested matters and Bankruptcy Rule 9006(f) requires an additional 3 days if notice is given by mail. Debtor's counsel offered no explanation for the 14 day delay in mailing the notice. The court assumes the delay in serving the notice was an isolated incident. In light of these circumstances the court considers the Jeanna Stone objection as timely.

After the filing of the motion and objection debtor filed an amended Schedule B-4 seeking to increase the homestead exemption amount to $7,500. Jeanna Stone objected to the proposed amended exemptions. The valuation contest has not been presented to the court for disposition.

moved to void Donald's lien under § 522(f)(1). Donald timely objected.[4]

*In re Doris Ann Hayes*

Jack and Doris Hayes were married in 1966. During their marriage, Jack and Doris Hayes purchased a residence. In 1984 they separated and filed a petition for dissolution. The parties did not enter into a separation agreement, and apparently litigated all matters involving the dissolution. In dividing the property, the superior court awarded the Debtor the house, subject to both the existing first mortgage and a lien in favor of Jack in the amount of $15,750, plus interest at 6%. The conveyance of the residence to the debtor was effected by a quit claim deed implementing the court's ruling. The deed was recorded on August 30, 1984, and purports to reserve or grant Jack a lien in accordance with the decree. Under the terms of the dissolution decree, the amount due to Jack was payable upon the earliest of several events: the sale of the residence, the debtor's remarriage or cohabitation, or the 18th birthday of the child of whom debtor had custody.

Jack, on at least one occasion, cured the debtor's default on the home mortgage. He also paid the delinquent real estate taxes on the residence. Consequently, the superior court on February 17, 1987 entered a judgment for these payments against debtor in the amount of $3,848.62. The superior court's order states that this sum "is hereby added to [Jack's] existing lien on the family home." The order also recites that "[P]etitioner's total lien against the family home located at West 5238 Navahow, Spokane, Washington shall be nineteen thousand five hundred ninety-eight dollars sixty-two cents ($19,598.62) all to bear interest as heretofore mentioned."

Debtor Doris Hayes on October 12, 1988 filed a petition for relief under chapter 13 of the Code. Debtor's schedules reported total debts in the amount of $38,000 and property with a fair market value of $77,550. The list of unsecured creditors was comprised of 13 persons, including Jack Hayes, each scheduled as holding an unsecured claim in the amount of "$1.00 +."[5] The schedules reported that the value of the residence was $74,000 and that it was subject only to two liens, *viz* a first mortgage in the amount of $33,000 and a deed of trust to debtor's counsel in the amount of $5,000.[6] Debtor elected the state exemptions, claiming a $30,000 homestead exemption pursuant to RCW 6.13.030.

In November 1988, debtor moved to void Jack's lien. Jack timely objected. Debtor subsequently moved to sell the residence free and clear of all liens, which were to attach to the proceeds. Upon stipulation of the parties, the court approved the sale of the residence for $62,000 and ordered that the proceeds be held by debtor's counsel pending the resolution of this matter.

## DISCUSSION

The law in this area is very confusing. The Code provisions are complex and unclear. The case law is often contradictory with no emerging consensus apparent. Dissents are common and frequently cited. It appears the United States Supreme Court may soon by considering some of the issues presented here. Faced with this labyrinth, this court shares the sentiments of District Judge Crow who said when he confronted the area a year ago, "With some trepidation, the court wades into waters muddied before it with little hope of settling anything but the instant dispute." *In re Rittenhouse*, 103 B.R. 250 at 252 (D.Kan.1989).

## I.

## A GENERAL STATEMENT OF THE PROBLEM

The debtors in these three cases all seek to avoid liens on property which they claim

4. Donald's objection asserts that the lien does not impair the exemption, insofar as the value of the residence exceeds the sum of the exemption and all liens. In his brief and at argument Donald's counsel asserted that Donald's lien is not a "judicial lien." A hearing on valuation of the property has not yet been conducted.

5. Debtor later amended Schedule A–3 to include additional creditors with claims in the amount of $5,147.

6. The deed of trust granted to debtor's counsel was recorded October 11, 1988, one day before the bankruptcy petition was filed.

exempt. 11 U.S.C. § 522(f) sets forth three conditions which are prerequisites for avoidance of the liens in these cases. These three conditions are:

i. ... "the debtor may avoid the fixing of a lien on an interest of the debtor in property" ...

ii. ... "to the extent that such lien impairs an exemption to which the debtor would have been entitled ..." and

iii. ... "if such lien is—(1) a judicial lien...."

The debtors must meet each of these conditions to avoid a lien. The court will discuss the legal principles applicable to each condition and then apply its conclusions to the facts of the specific cases.

## II.

## DOES THE LIEN AFFIX TO AN INTEREST OF THE DEBTOR IN PROPERTY?

This analysis begins with the language of the judgment or decree creating the lien.

In *Maus v. Maus*, 837 F.2d 935 (10th Cir.1988), the divorce decree awarded the residence to the wife "free and clear of all claims" of the husband. It also awarded a judgment to the husband against the wife for $22,000. It was clear to the court that the judgment lien attached to the wife's interest in the property, ... "[T]he decree gives one party title outright and that is the interest to which the lien attaches." 837 F.2d at 939.

The more common problem of interpretation of the language in a judgment arises where the property is awarded to one spouse "subject to" the lien of the other spouse. This problem is compounded, where as in these cases each spouse has an undivided community property interest in the property, prior to the award in the dissolution decree. The argument is that the lien imposed by the judgment does not attach to the debtors interest in the property but rather attaches to the lien creditors pre-existing interest in the property, i.e the lien creditor's interest may be transmuted from a community property interest to a lien interest but it is still the same interest.

This pre-existing interest argument has drawn the Judges confronting it into a rather metaphysical debate. Judge Ross influential dissent in *Boyd v. Robinson*, 741 F.2d 1112, at 1115 (8th Cir.1984) states one side of the argument:

> The state court's marriage dissolution order gave the house outright to Boyd, subject to Robinson's lien. Prior to the order, Robinson had a pre-existing interest in the house. But that is all it was—pre-existing. Robinson's prior interest in the house was dissolved. In its place, the court gave him a debt of $7,000 enforceable by a lien on the house. What had been a property interest became simply collateral for a debt. Since the house was simultaneously vested solely in Boyd, the lien *must* have attached to her interest in the house, for no one else possessed any ownership interest in the house.

Judge Posner, also in dissent, articulates the contra argument in *In re Sanderfoot*, 899 F.2d 598, at 607–608 (7th Cir.1990):

> The lien in our case was created in the same document—the divorce decree—that gave the husband his interest in the property. The lien qualified that interest from the start. There was no instant at which Sanderfoot owned the property free and clear of the wife's interest. He seeks a fresh start with someone else's property.

Judge Ross' position has been adopted by the Ninth Circuit. *In re Pederson*, 875 F.2d 781, at 783 (9th Cir.1989.) This court is bound by that decision on the pre-existing interest argument.[7]

7. The *Pederson* case seems a rather strange vehicle with which to dispose of the pre-existing interest argument. The liened residence was the separate property of the husband. During a one year marriage, the spouses had expended community property improving the real property. To equalize the property settlement, the dissolution court charged the residence with a specific lien for the wife's half of the community improvements. The Washington case law suggests that the wife didn't have an interest in the property prior to the time that the dissolution court granted her an equitable lien. *Marriage of Miracle*, 101 Wash.2d 137, at 139, 675

The liens in all three cases currently before the court affix to the debtor's interest in the property.

## III.

## WHAT IS THE NATURE OF THE LIENS IN THESE CASES?

A. *The Code's Categorization of Liens.*

11 U.S.C. § 101(33) provides:

(33) "lien" means charge against or interest in property to secure payment of a debt or performance of an obligation;

Section 101 contains definitions of three specific kinds of liens.

(32) "judicial lien" means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding;

(45) "security interest" means lien created by an agreement;

(47) "statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute;

The legislative history of 11 U.S.C. § 101(33) provides in part:

The definition is new and is very broad. A lien is defined as a charge against or interest in property to secure payment of a debt or performance of an obligation. It includes inchoate liens. In general, the concept of lien is divided into three kinds of liens; judicial liens, security interests, and statutory liens. Those three categories are mutually exclusive and are exhaustive except for certain common law liens. (H.R.Rep. No. 595, 95th Cong., 1st Sess. 312 (1977), U.S. Code Cong. & Admin.News 1978, p. 6269; S.Rep. No. 989, 95th Cong., 2d Sess. 25 (1978), U.S.Code Cong. & Admin.News 1978, p. 5811)

Thus Congress recognized that its statutory definitional scheme was not completely exhaustive. Neither are the categories of liens mutually exclusive. Judicial liens may coexist with other categories of liens in the same property. A classic example of this is the mortgage foreclosure proceeding. The mortgage being foreclosed constitutes a security interest which is by definition a lien created by agreement. 11 U.S.C. § 101(45). The judgment or decree of foreclosure creates a judicial lien. This analysis under the Bankruptcy Code parallels the dichotomy between security interests and judicial liens recognized in Washington law. *Damascus Milk Co. v. Morriss,* 1 Wash.App. 501, 463 P.2d 212 (1969).[8]

In the case of *In re Seidel,* 752 F.2d 1382, 1386 (9th Cir.1985), the court rejected the argument that a creditor converted his security interest into a judicial lien upon obtaining a judgment of foreclosure. The *Seidel* ruling undermines the argument that a mortgagee loses its status as a secured creditor as a result of entry of a foreclosure judgment and is left only with a judicial lien subject to being avoided under § 522(f). *Seidel* places the Ninth Circuit firmly with the majority of courts on this issue.

P.2d 1229, at 1231 (1984); Harry M. Cross, *The Community Property Law in Washington,* 61 Wash.L.Rev. 13, 67, 68 n. 278 and 70–71 (1985).

**8.** In *Damascus Milk* the court, quoting from *Flanders v. Aumack,* 32 Or. 19, 29–30, 51 P. 447 (1897) said:

"A mortgage is a specific lien, which attaches by virtue of the contract of the parties concerned; but the lien of a judgment is general, and attaches by operation of law, as a sequence of its rendition. Foreclosure is a remedy by which the property covered by the mortgage may be subjected to sale for the payment of the demand for which the mortgage stands as security, and, when the decree is had and the property sold to satisfy it, the mortgagee has obtained all he contracted for; but, if there is also a personal decree against the mortgage debtor, this becomes, from the date of its docketing, a general lien upon his real property, as in the case of a judgment; and, if a deficiency remains after the application of the proceeds of the sale of the lands covered by the mortgage, the decree may be enforced by execution, as in ordinary cases: . . ."

1 Wash.App. at 505, 463 P.2d at 214.

In addition to the three statutorily defined categories of lien, i.e judicial, security interest and statutory, there is an additional category of liens not defined by the Bankruptcy Code but alluded to in the legislative history. These are common law liens. H.R.Rep. No. 595, 95th Cong., 1st Sess. 312 (1977), U.S.Code Cong. & Admin. News 1978, p. 6269; S.Rep. No. 989, 95th Cong., 2nd Sess. 25 (1978), U.S.Code Cong. & Admin.News 1978, p. 5811. The Ninth Circuit in *U.S. v. Z.P. Chandron,* 889 F.2d 233 (9th Cir.1989) recognized such a common law lien, the seaman's lien for unpaid wages against a vessel.

The lien creditors in the cases currently before the court, resist the debtor's attempts to avoid their liens relying in part upon assertions of common law vendor or owelty liens. The debtors must show that the creditors liens to be avoided are "judicial liens."

B. *What are the Nature of the Liens in these Cases?*

Section 101(32) states:

> "judicial lien" means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding;

Thus to be a "judicial lien" a lien must owe its existence to some judicial action or process.

A general non-specific judgment lien clearly falls within the definition of a "judicial lien." *Maus v. Maus,* 837 F.2d 935 (10th Cir.1988). The Tenth Circuit however has ruled that an "equitable lien", i.e. a court imposed right to have specific property applied to payment of a particular debt, is not a "judicial lien" subject to avoidance. *In re Borman,* 886 F.2d 273 (10th Cir.1989); *In re Donahue,* 862 F.2d 259 (10th Cir.1988). The Seventh and Ninth Circuits however have rejected this position. *In re Pederson,* 875 F.2d 781, 782 (9th Cir.1989); *In re Sanderfoot,* 899 F.2d 598, 604–605 (7th Cir.1990). The ruling in *Pederson* is controlling on this court, therefore "equitable liens" constitute "judicial liens" in this Circuit and are subject to avoidance under § 522(f).

We turn now to the facts of the three cases before the court, to determine the nature of the liens with which we are dealing.

In the *Stone* case, the parties contemporaneously with the filing of the dissolution proceeding entered into a written property settlement agreement, and performed that agreement by execution of a note and deed of trust. The deed of trust was promptly recorded. Three months later the Superior Court entered a decree of dissolution which approved the property settlement and ordered the parties to comply with its terms. Jeffrey Stone, the debtor herein, subsequently filed a petition for relief under Chapter 7 of the Bankruptcy Code, claimed the residence as exempt under § 522(d)(1) of the Code and moved to avoid his ex-wife's deed of trust as a "judicial lien" under § 522(f).

The debtor argues that the incorporation by reference of the separation agreement into the decree creates a "judicial lien." RCW 26.09.070(6) provides that such an agreement "incorporated by reference in the decree may be enforced by all remedies available to enforcement of a judgment, ..." This court agrees the incorporation by reference of the separation agreement in the decree creates a "judicial lien" under 11 U.S.C. § 101(32).

Jeanna Stone, the ex-wife/lien creditor argues that the separation agreement, note and deed of trust create a "security interest", i.e. a "lien created by agreement." 11 U.S.C. § 101(45). RCW 26.09.070(6) provides that separation contracts "are enforceable as contract terms." 11 U.S.C. § 101(44) provides:

> (44) "security agreement" means agreement that creates or provides for a security interest.

This court concludes that the separation agreement, the note and deed of trust entered into and executed by the Stones constitute "security agreements" under the Code and thus create "security interests".

In the *Albright* case, the parties to a dissolution agreed on a property settlement and this was incorporated into the dissolu-

tion decree.[9] Sharon Albright, the recipient of the residence, filed for relief under Chapter 7 of the Bankruptcy Code, claimed the residence exempt under the Washington State Homestead Statute (RCW 6.13.-010 through .240), and moved to avoid the lien on the residence awarded to Donald Albright in the dissolution decree asserting it constituted a "judicial lien".

The court agrees with the debtor that the lien incorporated in the decree is a "judicial lien." The court also believes that the property settlement agreement incorporated in the decree constitutes a "security agreement" in that it evidences an agreement of the parties to create a security interest. The court thus concludes that a "security interest" was created by the agreed decree, as well as a "judicial lien".

The *Hayes* case, is significantly different from *Stone* and *Albright,* in that the lien sought to be avoided was created solely by judicial action in a contested matter, and thus untainted by any agreement. Such a lien cannot be a "security interest" in that there is no agreement. *In re Sanderfoot,* 899 F.2d 598, at 604–605 (7th Cir.1990).

Jack Hayes argues that his ex-wife should not be able to avoid his lien on the residence she claims exempt in her bankruptcy under the state homestead statute because his lien is in the nature of a vendor/owelty lien. *Hartley v. Liberty Park Assocs.,* 54 Wash.App. 434, 774 P.2d 40 (1989).

Do such vendor/owelty liens constitute common law liens, i.e. are they created as a result of the happening of certain factual events or do they rely upon judicial action, not only for their enforcement, but for their creation? If they rely on judicial action for their creation they are "judicial liens" within § 101(32).

The Washington State Supreme Court discussed the nature of vendor's liens in the case of *In re Washburn,* 98 Wash.2d 311, 654 P.2d 700 (1982), quoting in turn from *Lyon v. Herboth,* 133 Wash. 15, 233 P. 24 (1925):

> *At the common law the mere fact of the sale seems to have given the vendor an equitable lien on the property for the purchase price.* No recordation of it was necessary. It was a secret lien, and we held in [*Smith v. Allen,* 18 Wash. 1, 50 P. 783 (1897)] that such a lien was inconsistent with our recording acts. But the lien here sought to be enforced is not the secret equitable lien which was condemned. It is one by virtue of a judgment which respondents obtained for the purchase price. The vendor's lien mentioned in the homestead statute is not the kind of lien which we have held does not exist, but is the very kind that is here sought to be enforced. That statute cannot have any other meaning than that a homestead is subject to judgments based upon the purchase price. It seems to us plain that the legislature intended that it should be the public policy of this state that no one should be permitted to hold a homestead as against the person for whom he had purchased and to whom he had not paid the purchase money. *Until the appellant obtained their judgment they did not have any kind of lien, but when it was obtained it became an enforcible lien on the respondent's homestead.* There is no reason why a judgment representing the purchase money may not be as valid a lien against a homestead as a mortgage given by the purchaser representing the purchase money. (Emphasis added.)
>
> 98 Wash.2d at 313–314, 654 P.2d at 701.

The first sentence underscored above suggests that vendor's liens are common law liens and are created by the sale itself independent of any need for judicial action for their creation. The second underscored sentence contradicts the first, saying the lien doesn't exist until the judgment. The *Washburn* court goes on in its conclusion, "the vendor's lien is an equitable principle, such that a person who has secured the

9. The record does not disclose whether the property settlement was incorporated in a separate written agreement or simply in the agreed decree. For purposes of this decision the court assumes the agreement was only embodied in the agreed decree. If the agreement was embodied in a separate document the analysis of the *Stone* facts would be applicable.

estate of another and has not paid for it ought not, in good conscience, be allowed to keep it." 98 Wash.2d at 315, 654 P.2d at 702. This suggests that the vendor's lien is an equitable lien.

The concept of equitable liens was discussed in the case of *Monegan v. Pacific National Bank,* 16 Wash.App. 280 at 287–288, 556 P.2d 226 (1976), as follows:

> While no particular form is required to give rise to an equitable lien, the parties must have intended to impress a particular fund or thing with a charge *as security for an underlying debt or obligation.* 4 S. Symons, *A Treatise on Equity Jurisprudence* § 1235 (5th ed. 1941). 51 Am.Jur.2d *Liens* § 66 (1970). Equitable liens create no estate or property in the thing to which they attach; they provide no basis for a possessory action either against the debtor or his obligor or fundholder, as in the case of a perfected assignment. Under the doctrine of equitable lien, the debtor retains both title and right to possession until court action is taken to subject the security to payment of the debt it secures. As stated in *Nelson v. Nelson Neal Lumber Co.,* 171 Wn. 55, 61, 17 P.2d 626 (1932), paraphrasing 4 S. Symons, *A Treatise on Equity Jurisprudence* § 1233, at 692 (5th ed. 1941):
>
> > "An equitable lien is the right to have property subjected in a court of equity to the payment of a claim. ... It is neither a debt nor a right of property but a remedy for a debt. It is simply a right of a special nature over the property which constitutes a charge or incumbrance thereon, so that the very property itself may be proceeded against in an equitable action and either sold or sequestered under a judicial decree and its proceeds in one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists."

█ Applying this definition, this court believes that the vendor/owelty liens at issue in the three cases currently before the court are "equitable liens". These "equitable liens" require judicial action for their creation and as such are subject to avoidance under § 522(f)(1). They are not "common law liens" in the sense that they don't exist without a pre-requisite judicial action.

Having thus analyzed the various natures of the liens confronting the court in these three cases, the court now turns to whether the "judicial liens" found existent in these cases, impair the debtor's exemptions.

## IV.

## TO WHAT EXTENT, IF ANY, DOES THE JUDICIAL LIEN IMPAIR THE DEBTOR'S EXEMPTIONS

### A. *What is the Nature of the exemption claimed?*

█ § 522(b)(1) & (2) give the debtor the option of selecting exempt property under either the Bankruptcy Code exemptions provided in § 522(d) or the exemptions provided by state and non bankruptcy federal law. The debtor must select either of these exemption menus in its entirety, i.e. he can not pick and choose between the lists. *Collier on Bankruptcy,* Vol. 3, § 522.02, p. 522–10.

Jeffrey Stone claimed his residence exempt pursuant to § 522(d)(1), the exemption provided in the Bankruptcy Code. There is no exception in the terms of this exemption for the claims of liens of unpaid vendors.

Sharon Albright and Doris Hayes, in their respective cases, claim their residences exempt pursuant to the Washington state homestead law. RCW 6.13.010 through .240. RCW 6.13.080 provides in part:

> *The homestead exemption is not available against an execution or forced sale in satisfaction of judgments obtained:*
>
> (1) *On debts secured by* mechanic's, laborer's, materialmen's or *vendor's liens upon the premises;* (emphasis added)

"... A judgment based upon the purchase price of realty is in the nature of a vendor's

lien, within the meaning of RCW 6.12.100." *In re Washburn,* 98 Wash.2d 311, at 313, 654 P.2d 700 at 701. (dealing with the statutory predecessor of RCW 6.13.080). A lien awarded in a dissolution proceeding to equalize distribution of jointly held or community property is an owelty lien. *Hartley v. Liberty Park Assocs.,* 54 Wash.App. 434, at 438, 774 P.2d 40 at 42 (1989). In that case the court said:

> A sum of money paid in the case of partition of unequal proportions for the purpose of equalizing the portions is an owelty, and may be allowed as a lien on the excessive allotment if payment cannot be made at once. See *Von Herberg* [*v. Von Herberg*], 6 Wn.2d [100] at 121 [106 P.2d 737]; 4 G. Thompson, *Real Property* § 1827 (1979 repl.); 59A Am. Jur.2d *Partition* §§ 2, 257, 258 (1987). *A judgment for owelty is an equitable lien in the nature of a vendor's lien, which will prevail over a declaration of homestead. Adams* [*v. Rowe*], 39 Wn.2d [446] at 448–49 [236 P.2d 355]; *see also* 4G. Thompson, *supra;* 59A Am. Jur.2d, *supra;* 59A Am.Jur.2d, *supra,* § 258. (emphasis added)

Applying these rules to the facts of these cases, it appears that the liens which are the targets for avoidance in the *Albright* and *Hayes* cases are owelty liens in the nature of vendor liens. They were created to equalize a division of community property, i.e. jointly held property. The lien creditors had a recognizable legal interest in the property prior to the imposition of the lien by the court. As such these liens are enforceable against property claimed exempt under the Washington State Homestead statute, absent a bankruptcy.

B. *Effect of Bankruptcy on the Claimed State Exemption.*

The next step in this analysis requires the court to determine whether the Washington State Homestead statute, when selected in a bankruptcy by a debtor pursuant to a § 522(b)(2) election, includes the vendor/owelty lien exception.

Both Sharon Albright and Doris Hayes in their respective briefs rely on *In re Pederson,* 875 F.2d 781 (9th Cir.1989) in support of their motions to avoid their ex-spouses liens. In *Pederson,* the debtor owned a residence prior to his marriage. During the one year course of the marriage, the couple improved the residence with their earnings, i.e. community property. After a contested dissolution proceeding, the court awarded the home to the debtor because he had owned it prior to the marriage. The court however, also granted the wife a lien against the house for $8,000.00 to compensate for the improvements made on the property from community property. Shortly after the dissolution was concluded, Mr. Pederson filed bankruptcy, claimed the residence exempt under the Washington State Homestead Statute, and moved to avoid the ex-wife's lien under § 522(f)(1). The Bankruptcy Court denied the request for lien avoidance. The Bankruptcy Appellate Panel reversed. 78 B.R. 264 (9th Cir. BAP 1987.) The Ninth Circuit affirmed the BAP decision. The debtors in both *Albright* and *Hayes* argue that this decision is controlling precedent on the facts of their respective cases.

This court does not believe that the decision in *Pederson* is controlling on whether the vendor lien exception to the Washington State Homestead Statute is applicable in bankruptcy. In order to obtain a vendor/owelty lien you must first have a preexisting interest in the property prior to the award of the lien, i.e. you must have an interest that you are selling to the other party. In *Pederson,* the residence was the husband's separate property. The lien was an equitable lien imposed by the court in a contested dissolution proceeding. Prior to the entry of that decree the wife had no interest in the property.[10] Thus there

10. Although the use of community funds to improve separate property may give rise to a right of reimbursement, the community may have realized some current benefit or some other factor may have effected repayment, thus the imposition of an equitable lien is a matter of judicial discretion. *Marriage of Miracle,* 101 Wash.2d 137, at 139, 675 P.2d 1229 at 30–31 (1984); Harry M. Cross, *The Community Property Law in Washington,* 61 Wash.L.Rev. 13, 70–71 (1985).

could have been no vendor/owelty type liens before the court in *Pederson.* Neither the BAP nor Ninth Circuit decisions mention vendor or owelty liens nor the specific exception in the Washington State Homestead law for such liens. Thus those decisions are not controlling on the issue of whether choice of the state exemptions carries with it the limitations of the exceptions to the exemptions.

The Court of Appeals for the Eleventh Circuit faced this problem in *Owen v. Owen,* 877 F.2d 44 (11th Cir.1989) Cert. granted — U.S. —, 110 S.Ct. 2166, 109 L.Ed.2d 496 (1990). The debtors ex-wife had obtained a judgment lien against the debtor's residence, which lien attached prior to the residence qualifying as a homestead under Florida law. In such cases, the homestead was not exempt from the lien. The debtor filed bankruptcy, claimed the residence exempt under state law and moved to avoid the ex-wife's lien. The Court of Appeals ruled that the lien could not be avoided because "... [T]here is no impairment because the exemption is specifically subject to this exception." 877 F.2d at 47. In reaching this decision the court said as follows:

> He (the debtor) argues, though, that section 522(f) allows him to avoid the lien because he now qualifies for the homestead exemption and if the lien did not exist, he could claim the exemption. In effect, he argues that federal law gives him an exemption that state law would not, even though the exemptions in Florida are defined by state law because of its "opting out" of the federal exemption.
>
> Congress did not intend through section 522(f), however, to provide a federal exemption greater than that protected by state law where the exemption is created by state law. The legislative history of section 522(f) indicates that Congress sought to protect debtors from the race to judgment often occurring just prior to a debtor filing bankruptcy.
>
> . . . . .
>
> This is not the case here. The debtor never held this property exempt from this judicial lien.
>
> *Ibid.*

The *Owen* case stands for the proposition that if you opt for the state exemptions you take them subject to the exceptions.

The opposite conclusion was reached by the Court of Appeals for the Fourth Circuit in the case of *In re Snow,* 899 F.2d 337 (4th Cir.1990) Pet. for Cert. filed *Green v. Snow,* U.S.Sup.Ct. No. 90-44 (7/20/90). A landlord had obtained a judgment for unpaid rent and levied on the debtor's personal property. The debtors filed bankruptcy claiming the property subject to the levy exempt under the Virginia exemption statute. The state statute provided exempt property was subject to execution in enforcement of judgments for rent. The Court of Appeals for the Fourth Circuit ruled that the lien could be avoided.

The Fourth Circuit analyzed a number of Circuit decisions in reaching its decision in *Snow.*[11] Although the *Owen* decision was not mentioned, like *Snow,* it deals with the question of the avoidability in bankruptcy of a "judicial lien" which is enforceable against exempt property under state law. The Fourth Circuit analysis is focused, with one inapplicable exception [12] on cases applying § 522(f)(2), avoidance of non-possessory, non-purchase money "security interests" in household goods, tools of the trade and health aids. The Fourth Circuit's analysis clearly equates the avoidance of these specified categories of "security interests" under § 522(f)(2) with avoidance of "judicial liens" under § 522(f)(1).[13] Query: Is this equation justified?

11. In support of its position it cites: *In re Thompson,* 884 F.2d 1100 (8th Cir.1989); *In re Leonard,* 866 F.2d 335 (10th Cir.1989); *Dominion Bank of Cumberlands, N.A. v. Nuckolls,* 780 F.2d 408 (4th Cir.1985); *In re Hall,* 752 F.2d 582 (11th Cir.1985); and *In re Brown,* 734 F.2d 119 (2d Cir.1984). As cases opposing its position it cites: *In re Pine,* 717 F.2d 281 (6th Cir.1983); and *In re McManus,* 681 F.2d 353 (5th Cir.1982).

12. *In re Brown,* 734 F.2d 119 (2d Cir.1984) which dealt with Bankruptcy Code exemptions.

13. This is underscored by the last sentence of the *Snow* opinion, 899 F.2d at 340 which says:

> "In the words of the *Leonard* court, and changing only the word Colorado to Virginia, since [Virginia] law allows the property to be

In support of its decision in *Snow,* the Fourth Circuit completely relies on cases which found a conflict between § 522(f)(2) and the state exemption statutes, and applied the Supremacy Clause of the Constitution to uphold the Bankruptcy Code section. The decision to give primacy to the Bankruptcy Code Section is premised on finding a conflict between the Code and the state exemption statutes. Does such a conflict exist in the cases before this court? This requires a review of the legislative history in this area.

Congress when contemplating revisions of the bankruptcy law originally considered providing a uniform and exclusive bankruptcy exemption provision to be applied in all bankruptcy cases.[14] During the legislative process, this proposal was modified to allow the states to opt out of the bankruptcy code exemption menu and require the debtors to use only the state exemptions in bankruptcy cases. § 522(b)(1). If the state chose not to opt out, the debtors were allowed to choose their exemptions either from the Bankruptcy Code menu (§ 522(d)) or the state and non-bankruptcy federal exemptions. § 522(b). Congress thus allowed the states to proscribe if they chose, the nature of the exemptions that might be used in Bankruptcy.[15] This is a real and significant delegation of authority by Congress to the states.

Despite this deference to the authority of the states in the exemption area, Congress did not give unlimited authority. The states even in the exemption area can not enact legislation which is in conflict with specific provisions of the Bankruptcy Code. An example of an area where at least some courts have discovered such a conflict, is where state exemption laws makes exempt personal property subject to security interests, while § 522(f)(2) of the Code allows avoidance of security interests in non-possessory, non-purchase money security interest in certain exempt property. The courts, that have found a conflict in this situation, have ruled that the § 522(f)(2) prevails, relying on the Supremacy Clause of the United States Constitution.[16]

The question that must be decided is whether there is a conflict between application of the terms and limitations of the Washington State Homestead Statute and § 522(f)(1)? In deciding this issue, since Congress gave the states such great authority in the area, the courts must also give deference to the state law. The Bankruptcy Court should find a clear and specific conflict before it applies Code provisions in derogation of the state exemption laws.

The Washington State homestead law is quite explicit in defining an exception for vendor liens. The case law is equally specific in categorizing the type of liens present in the *Albright* and *Hayes* cases as falling within that exception. The state law is thus clear. A clear conflict with the Bankruptcy Code provision must be discovered before the Code provisions would apply.

In search of such a potential conflict, we turn first to § 522(c).[17] This section defines the debts for which exempt property is liable. These debts are certain taxes

exempted if no *security interest* exists, a *security interest* could be avoided under § 522(f). 866 F.2d at 337." (Emphasis added.)

14. Report of the commission on the Bankruptcy Laws of the United States H.R.Doc. No. 93–137, 93rd. Cong. 1st Sess., Pts I and II 1973, Section 4–503.

15. This is not unique in that under the Bankruptcy Act, state law and non bankruptcy law provided the only exemption provisions available to debtors. *Collier on Bankruptcy,* Vol 3, § 522.01, p. 522–29.

16. See cases cited in footnote 11.

17. § 522(c) provides as follows:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except

(1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title; or

(2) a debt secured by a lien that is

(A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not void under section 506(d) of this title; or

(B) a tax lien, notice of which is properly filed.

(§ 523(a)(1)), child support/alimony obligations (§ 523(a)(5)), and debts secured by liens which are not avoided under § 522(f), among other lien avoidance provisions. Although § 522(c) recognizes that debts secured by liens not avoided under § 522(f) are enforceable against exempt property, its language lends no held in interpreting what liens can be set aside under § 522(f). § 522(c) language is neutral on this point, and thus cannot be used as a basis to show conflict between the state and bankruptcy provisions.

We turn to § 522(f) which provides:

> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is
>
> (1) a judicial lien; or
>
> (2) a nonpossessory, nonpurchase-money security interest in any
>
> (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
>
> (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
>
> (C) professionally prescribed health aids for the debtor or a dependent of the debtor.

The concept of allowing special treatment to purchase money type obligations is not contrary to the basic tenants of the bankruptcy law. § 522(f)(2) specifically exempts purchase money security interests from its avoiding powers. The more generic treatment of "judicial liens" under § 522(f)(1), does not mandate contrary treatment for judicial liens for purchase money obligations. The question is whether a vendor lien impairs the state exemption. This refines down into the further question of whether the exemption being protected includes or excludes the statutory exceptions.[18] This court can find no clear Code provisions which speak to this point and thus there is no specific conflict between state law and the Bankruptcy Code. In the absence of such a conflict, deference should be given by the courts to the state statute, as it was by the Congress. This court concludes that the exemption being protected is the specific exemption designed by the state law including the exceptions.

Having concluded that the exemption to be protected from the impairment by liens, is the exemption as limited by the terms of its own exceptions, this court must still determine whether the liens in question impair that exemption. If the lien is set aside can the debt represented by the lien still be enforced against the property?

This test is derived from the legislative history of § 522(f) which provides in part:

> Subsection (f) protects the debtor's exemption, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. *The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien....* The Avoidance Power is independent of any waiver of exemptions. (Emphasis added.)

H.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) 362; S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978) 76 (under subsection (e)), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862, 6318.

The test is consistent with *In re Baxter*, 19 B.R. 674 (9th Cir. BAP 1982), where the

18. "An appropriate, if informal metaphor, is to compare the exemption to a wedge of Swiss cheese.

'Just as the entirety of the wedge is composed of both the cheese and the holes, the entirety of the homestead exemption is composed of both the substantive provision allowing a debtor to exempt certain property and the exceptions to that exemption which, in the metaphor, constitute the holes.'" *BNA's Bankruptcy Law Reporter,* Vol. 2, # 31, p. 744 (August 9, 1990) reporting on a petition for certiorari filed with the United States Supreme Court in the case of *Green v. Snow,* U.S.Sup.Ct., No. 90–44 by attorney C. Waverly Parker of Standardsville, VA.

court approved the avoiding of a lien which attached to a residence before the homestead was perfected. But for that lien the property could not have been reached to satisfy that debt. The test is not inconsistent with *In re Pederson,* 875 F.2d 781 (9th Cir.1989) which doesn't discuss the nature of the exemption impaired.

In the *Albright* and *Hayes* cases, the debts, which are in the nature of obligations owed as a result of sale or partition of property, could be enforced against the property sold or partitioned, despite the properties exempt status. It might be argued that such enforcement actions would be barred by the bankruptcy discharge. The exemption provisions are independent of the discharge provisions. *Norwest Bank Nebraska N.A. v. Tveten,* 848 F.2d 871, at 873–874 (8th Cir.1988); *In re Reed,* 700 F.2d 986, at 992 (5th Cir.1983). Properly claimed exemptions are effective whether or not the debtor is granted a discharge. Thus this determination as to lien avoidance must be made without reference to the additional relief which might be provided if a discharge was granted the debtor.

The state homestead claimed by debtors Albright and Hayes is limited in its scope in that it is subject to execution in satisfaction of purchase money/partition equalization obligations. The judicial liens of the debtors ex-spouses do not impair that exemption. The homestead is subject to levy in satisfaction for these debts with or without these liens.

C. *Is the Bankruptcy Code Exemption claimed in the Stone case impaired by the judicial lien?*

Jeffrey Stone chose to exempt his residence under the Bankruptcy Code schedule of exemptions, § 522(d)(1). That section contains no exception for purchase money type obligations. Thus the preceding analysis of the state homestead statute is not applicable. Yet the test of impairment articulated there is equally applicable in this situation. If the judicial lien is set aside, can the debt secured by the lien still be enforced against the property?

In the *Stone* case, the spouses entered into a written property settlement agreement, executed a note and deed of trust, and when the dissolution decree was entered some three months afterward, it incorporated the property settlement in its terms.

The debtor in *Stone* argues that the incorporation by reference in the decree makes the settlement agreement and the deed of trust judicial liens. He bases this argument on this language found in *In re Pederson,* 875 F.2d 781, at 783 n. 4 (9th Cir.1989):

> Other courts have held that a lien created in a settlement agreement is equivalent to a consensual security interest rather than a judicial lien, for purposes of section 522(f)(1). *See, e.g., Hart v. Hart (In re Hart),* 50 B.R. 956, 961–62 (Bankr.D.Nev.1985). We reject these theories as implausible and unsupported by the language of the Code.

The *Pederson* case did not deal with a settlement agreement, it dealt with a decree in a contested dissolution. It did not discuss or analyze the differences under the Code between a "judicial lien" and a "security interest". That problem was not before the *Pederson* court. This court believes the statement relied upon by the debtor is dictum and not controlling in this case.[19]

**19.** See *U.S. v. Crowley,* 837 F.2d 291, at 292–293 (7th Cir.1988) where the court said:

> What is at stake in distinguishing holding from dictum is that a dictum is not authoritative. *It is the part of an opinion that a later court, even if it is an inferior court, is free to reject.* So instead of asking what the word "dictum" means we can ask what reasons there are against a court's giving weight to a passage found in a previous opinion. There are many. One is that the passage was unnecessary to the outcome of the earlier case and therefore perhaps not as fully considered as it would have been if it were essential to the outcome. A closely related reason is that the passage was not an integral part of the earlier opinion—it can be sloughed off without damaging the analytical structure of the opinion, and so it was a redundant part of that opinion and, again, may not have been fully considered. Still another reason is that the passage was not grounded in the facts of the case

As observed previously, the property settlement agreement and deed of trust created security interests in the property.[20] The decree created a judicial lien. Does this judicial lien impair the debtor's exemption?

The court concludes that it does not. Even if the judicial lien is avoided, the residence will still be subject to the property settlement agreement and deed of trust. § 522(f) provides no means of avoiding this property settlement agreement and deed of trust on the debtor's residence. Thus even if the judicial lien is avoided the property will still be subject to enforcement measures to satisfy this debt. Thus the "judicial lien" of the decree does not impair the exemption.

Applying this same reasoning, the judgment lien in *Albright* would not impair the exemption. This assumes that the security interest created by the property settlement argument could not be avoided pursuant to § 522(h). That seems unlikely since the lien constitutes a voluntary transfer (§ 522(g)(1)(A)) and it in all likelihood is not subject to avoidance under § 544(a)(3).

## CONCLUSION

Jeffrey Stone's motion to avoid the lien of Jeanna Stone should be denied. Although the decree of dissolution creates a judicial lien which attaches to the debtor's interest in the property, the lien does not impair the debtor's exemption. The property settlement agreement, note and deed of trust create a security interest. Even if the judicial lien was avoided, the property would remain subject to Jeanna Stone's security interest in the property.

Sharon Albright's motion to avoid lien of Donald Albright should be denied. Although the decree of dissolution creates a judicial lien which attaches to the debtor's interest in the property, the lien does not impair the debtor's exemption. The agreed dissolution decree creates a security interest in the residence. Even if the judicial lien created by the decree was avoided the property would remain subject to Donald Albright's security interest in the property. In addition, the Washington State homestead is subject to execution upon vendor/owelty type debts such as that owed Donald Albright. When the debtor opted for the state exemptions, she took them subject to the exceptions inherent to those exemptions. Thus her exemption under the state statute is not impaired by Donald's judicial lien, the exempt property could be reached to satisfy this debt with or without this lien.

Doris Hayes' motion to avoid the lien of Jack Hayes should be denied. Although the decree of dissolution creates a judicial lien which attaches to the debtor's interest in the property, the lien does not impair the debtor's exemption. The Washington State homestead is subject to execution upon vendor/owelty type debts such as owed Jack Hayes. When the debtor opted for the state exemptions she took them subject to the exceptions inherent to those exemptions. Thus her exemption under the state statute is not impaired by Jack's judicial lien, the exempt property could be reached to satisfy this debt with or without this lien.

The court will enter orders consistent with this decision.

---

and the judges may therefore have lacked an adequate experiential basis for it; another, that the issued addressed in the passage was not presented as an issue, hence was not refined by the fires of adversary presentation. All these are reasons for thinking that a particular passage was not a fully measured judicial pronouncement, that it was not likely to be relied on by readers, and indeed that it may not have been part of the decision that resolved the case or controversy on which the court's jurisdiction depended (if a federal court).

20. See discussion at page 228.