[No. 21248–6–I.   Division One.   June 12, 1989.]

MICHAEL C. HARTLEY, ET AL, *Respondents*, v. LIBERTY PARK ASSOCIATES, *Appellant*.

*Ralph Maimon* and *Oseran, Hahn, Kelley, Spring & Maimon,* for appellant.

*Roger Jones* and *Ordal & Jones,* for respondent Hartley.

*Gregory Cromwell* and *Cromwell, Mendoza & Belur,* for respondent National Bank of Tukwila.

WINSOR, J.—Liberty Park Associates (Liberty Park) appeals an order awarding Michael Hartley the surplus proceeds following a nonjudicial deed of trust foreclosure. It contends that the trial court erred in establishing the priority of the junior encumbrances. We affirm.

Michael and Patricia Hartley purchased residential real property in Issaquah, Washington (Issaquah property). The purchase was partially financed through a deed of trust ultimately assigned to the Alaska Teachers Retirement System (Alaska Teachers).

Patricia and Michael's marriage was dissolved pursuant to a King County decree filed March 30, 1984. The court awarded the Issaquah property to Patricia subject to Michael's "lien in the amount of Forty Thousand Dollars ($40,000.00) payable upon sale of the property, or twenty-four (24) months from the date of entry of the Decree of Dissolution, whichever is sooner . . ." Michael did not record the decree with the King County Auditor.

In April 1986, Patricia borrowed $120,000 from the National Bank of Tukwila (Tukwila). Patricia secured this

loan with a deed of trust on the Issaquah property, which Patricia was using as her primary home and residence. Tukwila recorded its deed of trust on May 2, 1986. Patricia also borrowed $60,000 from Liberty Park and secured this loan with a deed of trust on the Issaquah property. Liberty Park recorded its deed of trust on May 5, 1986.

In April 1986, Michael learned that Patricia was attempting to refinance the Issaquah property. Michael became concerned about protecting his lien, so he asked Patricia for a deed of trust on the Issaquah property. Patricia signed the deed of trust in July 1986, and it was recorded August 13, 1986. Patricia did not tell Michael that she had given deeds of trust to Tukwila and Liberty Park when she executed Michael's deed of trust.

In August 1986, Patricia defaulted on payments under the Alaska Teachers' note. Alaska Teachers instituted a nonjudicial foreclosure, culminating in a trustee's sale at which the Issaquah property sold for $103,817.35. After deducting the money owed Alaska Teachers and the cost of the foreclosure, there remained a surplus of $52,646.47. The surplus was deposited into the registry of the King County Superior Court Clerk pursuant to RCW 61.24.080.

Michael, Tukwila and Liberty Park filed petitions for disbursal of the surplus funds. Michael claimed the surplus funds pursuant to the 1984 decree of dissolution. The trial court determined that Michael's lien was senior and therefore superior to the interests of Tukwila and Liberty Park, and awarded Michael all the surplus funds.

Liberty Park contends: (1) that the decree of dissolution created an ordinary money judgment lien which did not attach to the Issaquah property because that property was subject to Patricia's homestead exemption; and (2) that even if Michael's lien attached to the Issaquah property, Liberty Park's deed of trust is superior to Michael's unrecorded lien. Michael contends that under the decree of dissolution his was an owelty judgment lien which falls within the vendor's lien exception to the homestead act.

When property is nonjudicially foreclosed the proceeds of the sale are applied first to the expense of sale, second to the obligation secured by the deed of trust, and third

> [t]he surplus, if any, less the clerk's filing fee shall be deposited together with a copy of the recorded notice of sale with the clerk of the superior court of the county in which the sale took place. . . . *Interests in, or liens or claims of liens against the property eliminated by sale under this section shall attach to such surplus in the order of priority that it had attached to the property.* The clerk shall not disburse such surplus except upon order of the superior court of such county.

(Italics ours.) RCW 61.24.080(3).

A judgment[1] granted by the superior court creates a lien against the judgment debtor's nonexempt real property. RCW 4.56.190.[2] Judgment liens of the superior court for the county in which the real estate of the judgment debtor is situated commence from the time the judgment is entered. RCW 4.56.200(1). Real property which constitutes the primary residence of the judgment debtor is exempt as a homestead from execution or forced sale, except as provided in RCW 6.13.080.[3] *Federal Intermediate Credit Bank v. O/S Sablefish,* 111 Wn.2d 219, 229, 758 P.2d 494 (1988). Judgments of the superior court will not become liens upon homestead property except in certain specified situations fixed by statute. *See* RCW 6.13.080; *Mahalko v. Arctic Trading Co.,* 99 Wn.2d 30, 34, 659 P.2d 502 (1983), *overruled on other grounds in Felton v. Citizens Fed. Sav. & Loan Ass'n,* 101 Wn.2d 416, 424, 679 P.2d 928 (1984); *Webster v. Rodrick,* 64 Wn.2d 814, 817, 394 P.2d 689 (1964). Such "specified situations" include judgments

---

[1] A decree of dissolution is a judgment. *See* RCW 26.09.010(5).

[2] RCW 4.56.190 states in relevant part:
"The real estate of any judgment debtor, and such as the judgment debtor may acquire, not exempt by law, shall be held and bound to satisfy any judgment of the . . . superior court . . . and every such judgment shall be a lien thereupon to commence as provided in RCW 4.56.200 . . . ."

[3] RCW 6.13.080 was formerly codified as RCW 6.12.100.

obtained "[o]n debts secured by mechanic's, laborer's, materialmen's or *vendor's* liens upon the premises", (italics ours) RCW 6.13.080(1), and will become judgment liens pursuant to RCW 4.56.190 and RCW 4.56.200. *See Webster v. Rodrick, supra.*

In the dissolution proceedings the Superior Court had Michael and Patricia's property before it for partitioning. *See* RCW 26.09.050. The court determined that the family home could not be appropriately divided, so it awarded the Issaquah property to Patricia, and gave Michael a money award of $40,000 to equalize the distribution. The court's authority for the compensation is the "time–honored doctrine of owelty". *Von Herberg v. Von Herberg,* 6 Wn.2d 100, 121, 106 P.2d 737 (1940); *see also Adams v. Rowe,* 39 Wn.2d 446, 447, 236 P.2d 355 (1951).

▮ A sum of money paid in the case of partition of unequal proportions for the purpose of equalizing the portions is an owelty, and may be allowed as a lien on the excessive allotment if payment cannot be made at once. *See Von Herberg,* 6 Wn.2d at 121; 4 G. Thompson, *Real Property* § 1827 (1979 repl.); 59A Am. Jur. 2d *Partition* §§ 2, 257, 258 (1987). A judgment for owelty is an equitable lien in the nature of a vendor's lien, which will prevail over a declaration of homestead. *Adams,* 39 Wn.2d at 448–49; *see also* 4 G. Thompson, *supra;* 59A Am. Jur. 2d, *supra,* § 258. An award of owelty will become a lien on the partitioned property as established in RCW 4.56.190.

▮ The Issaquah property is located in King County, and the decree of dissolution was filed in King County Superior Court. Pursuant to RCW 4.56.200(1), a judgment lien attached to the Issaquah property on March 30, 1984, the date the decree was filed. The filing of the decree provided constructive notice to any subsequent purchaser or mortgagee that the Issaquah property was encumbered by Michael's lien for $40,000 plus interest. *O/S Sablefish,* 111 Wn.2d at 223–25. While Michael could also have filed the decree as a lien in the county auditor's office, such recording was not necessary for the lien to be effective against

purchasers of the property. *O/S Sablefish,* 111 Wn.2d at 226–27. Thus, Liberty Park had constructive notice of Michael's lien, and its deed of trust is subordinate to Michael's lien.

Liberty Park contends that even if it had constructive notice of Michael's lien, Michael relinquished his lien when he accepted a deed of trust on the Issaquah property. The deed stated that Michael accepted it to secure "payment of the sum of . . . $40,000.00, with interest, in accordance with the terms . . . of the Decree of Dissolution. . . ." Michael recorded this deed of trust 3 months after Liberty Park recorded its deed of trust. Liberty Park contends that the priority of Michael's claim must be determined with reference to the date the deed of trust was recorded, rather than the date of dissolution.

Michael contends that even if the evidence established that the deed of trust extinguished his lien, the lien should be revived as against Liberty Park's intervening deed of trust because he did not intend to relinquish his own lien's priority. *See* 55 Am. Jur. 2d *Mortgages* § 450 (1971). Michael's position is supported by *Bormann v. Hatfield,* 96 Wash. 270, 164 P. 921 (1917).

In 1915, the creditor in *Bormann* executed a release of his 1910 mortgage in exchange for a new mortgage. When the creditor executed the release, he had no actual knowledge that there was a 1911 mortgage on the property. *Bormann,* 96 Wash. at 270–71. The court canceled the release of the 1910 mortgage and restored it as a prior lien to the 1911 mortgage, despite the fact that the creditor could have discovered the 1911 mortgage by examining the public records. 96 Wash. at 272–74. The court held that when the holder of a first mortgage takes a new mortgage as a substitute therefor and releases the original mortgage in ignorance of an intervening lien upon the mortgaged premises equity will restore and reinstate the lien of the first mortgage and give it its original priority. The court also said that the rule is subject to the limitation or qualification that, by restoring the discharged lien, the holder of the

junior incumbrance must not be placed in a worse position that s/he would have occupied had the senior incumbrance not been released. It reasoned that to deny this relief and to refuse to restore for the protection of the first mortgagee the lien of the prior mortgage would be to permit the second mortgagee to unjustly profit by the mistake of the former. S/he is in no way prejudiced, but is left to enjoy exactly what s/he expected to get when the second mortgage was accepted. *Bormann,* 96 Wash. at 274.

Here, when Michael accepted the deed of trust from Patricia, he did not have actual knowledge of Liberty Park's deed of trust. Restoring Michael's lien will not prejudice Liberty Park, because Michael's lien had already attached to the Issaquah property when Liberty Park accepted its deed of trust. Liberty Park will merely be left to enjoy exactly what it expected to get when it accepted its deed of trust. The order awarding Michael the surplus trustee sale proceeds is affirmed.

SWANSON, J., and SCHUMACHER, J. Pro Tem., concur.

Review denied at 113 Wn.2d 1013 (1989).