**In re Aaron E. HASTINGS; Lorraine Hastings, Debtors.**

**Aaron E. HASTINGS and Lorraine Hastings, Appellants,**

**v.**

**Matthew HOLMES, Appellee.**

**BAP No. EC–94–1536–VRO.**
**Bankruptcy No. 93–21896–A–7.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Submitted March 23, 1995 [1].

Decided Aug. 17, 1995.

1. The panel granted appellee's unopposed motion for submission of this appeal without oral argument.

Aaron E. Hastings, Sacramento, CA, in pro. per.

L. Kent Wyatt, Sacramento, CA, for appellee.

## *OPINION*

Before VOLINN, RUSSELL and OLLASON, Bankruptcy Judges.

VOLINN, Bankruptcy Judge:

### OVERVIEW

■ Under California law, a debtor does not have automatic homestead protection against a judgment lien that attaches to real property at a time prior to the debtor having made the property a dwelling place. In the order on review, the bankruptcy court held state law governed and denied the debtors' motion to avoid such a pre-existing lien as impairing their homestead based on the federal exemption statute, 11 U.S.C. § 522(f). We VACATE the order and REMAND.

## FACTS AND PROCEEDINGS BELOW

The debtors, Aaron E. and Lorraine Hastings, previously resided in Fair Oaks, California and owned two additional residential properties: a former residence in Folsom and a single-family rental house in Sacramento. In 1988, the rental house was damaged by vandalism and fire and became unoccupied.

Also in 1988, the debtors moved to Florida, and, while residing there, offered for sale the properties in Fair Oaks and Folsom. The Fair Oaks and Folsom properties were sold, but the debtors were unable to realize their asking price for the rental house in Sacramento and decided to retain it in contemplation of their possible return to California. The debtors allege that they did not buy property during their stay in Florida, and that after the sale of Fair Oaks and Folsom properties, the Sacramento rental house was their only real property.

Appellee, Matthew Holmes, is a business creditor of the debtors. While the debtors sojourned in Florida, Holmes sued their business in California for breach of contract, naming the debtors personally. On March 26, 1990, he took a default judgment against the debtors for $8,032.24 with interest at 10 percent per annum. On June 15, 1990, he recorded an abstract of the judgment with the Sacramento county recorder. Pursuant to statute, on that date the judgment became a lien on the then rental house. Cal.Ann. Code Civ.Pro. § 697.310(a) (West 1987).

In April 1990, after entry of the default judgment but before the abstract of judgment was recorded, the debtors returned to California. They did not move onto their Sacramento property directly, stating that they immediately commenced repairs to it and ultimately occupied it the following October. The debtors state that prior to and upon their return from Florida in April, they intended the rental house to be their dwelling, and considered it to be their homestead. They admit that they did not reside there on June 15, 1990 when Holmes' lien attached, and that they never filed a declaration of homestead on the property.

On February 2, 1993, the debtors received from the IRS a notice of intent to levy on the

property to satisfy tax delinquencies of $43,-615.05. On March 3, 1993, the day before the scheduled levy, the debtors filed a chapter 13 petition.

The debtors filed a chapter 13 plan on April 8, 1993. Holmes filed proof of a secured claim for $12,182.62, consisting of his judgment plus prepetition interest. The debtors claimed a homestead exemption on the property in the amount of $75,000. In the plan, the debtors disputed Holmes' claim and proposed to avoid his judicial lien.

Subsequently, the debtors filed a motion to avoid the lien pursuant to 11 U.S.C. § 522(f), scheduling a hearing for April 26, 1994. They also filed a second motion proposing to amend their plan. The proposed modifications did not change the treatment of Holmes' claim or lien as proposed under the original plan. Holmes filed an opposition to the debtors' motion to modify their plan, and scheduled a hearing on his opposition for May 17, 1994. Although his opposition was framed against plan modification, the gist of the opposition was directed toward the debtors' proposed lien avoidance, contending that sufficient equity existed in the property so that his lien did not impair the debtors' claimed homestead amount.

Argument on both motions was heard on April 29, 1994. Following argument, the court deferred disposition of the motion to modify the plan pending the resolution of events not relevant to the issue on review. The court did not rule as to the value of the property because it determined that Holmes' lien was immune from and superior to the debtors' homestead under California law. The court denied the motion to avoid the lien. The debtors prematurely filed a notice of appeal on May 9, 1994. An order denying the motion to avoid the lien was subsequently entered on June 22, perfecting our jurisdiction over this appeal. Fed.R.Bankr.P. 8002.

## ISSUE PRESENTED

Whether § 522(f) of the Bankruptcy Code permits a debtor to avoid the fixing of a judgment lien when the lien would have priority to the debtor's homestead exemption under state law.

## STANDARD OF REVIEW

The issue is one of law reviewed *de novo*. *In re Mayer*, 167 B.R. 186, 188 (9th Cir. BAP1994).

## DISCUSSION

■ Under § 522, debtors may exempt certain property from their bankruptcy estate and the reach of their general creditors. "These exemptions prevent certain property from becoming part of the bankruptcy estate, and thus place the exempted property beyond the reach of the bankruptcy trustee." *In re Pladson*, 35 F.3d 462, 464 (9th Cir. 1994).

■ The exemption provisions determine the issue of possession of exempt property between the debtor and his estate, but do not dispose of the issue between the debtor and creditors claiming liens or security interests in the exempt property. In the instant case, controversy arises between the debtors and a judgment creditor, who, if he had not reduced his debt to judgment and recorded it prior to bankruptcy, would hold only a general unsecured claim, which would be subject to discharge and payable out of the liquidation proceeds, if any, of non-exempt assets. Where the creditor has a perfected lien in the exempt property, however, the property continues to be liable for the debt after the debtors' personal liability is discharged, 11 U.S.C. § 522(c)(2)(A)(i), unless, *inter alia*, the lien can be avoided.

The debtors thus seek to avoid the continued existence of the lien on property which they would otherwise be permitted to retain after their discharge as part of their "fresh start." Lien avoidance in this situation is determined pursuant to § 522(f)(1), which provides in relevant part:

> [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption *to which the debtor would have been entitled* under subsection (b) of this section, if such lien is—
>
> (A) a judicial lien....

11 U.S.C. § 522(f)(1) (emphasis added).

The parties do not dispute that, because the debtors resided on the property on the

date they filed their chapter 13 petition, under California's exemption scheme they are otherwise entitled to exempt $75,000 of equity in the property from their bankruptcy estate. *In re Mayer,* 167 B.R. 186, 189 (9th Cir. BAP 1994).[2] At issue here is whether this homestead exemption is impaired by appellant's lien so that the lien can be avoided under § 522(f), as quoted above.[3]

Under California's exemption scheme, the exemption at issue here—California's so-called "automatic homestead"—is defined as follows:

> "Homestead" means the principle dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead....

Cal.Ann.Code Civ.Pro. § 704.710(c) (West 1987).

The legislative committee comment to this section explains that subsection (c) "is intended to preclude a judgment debtor from moving into a dwelling after creation of a judgment lien or after levy in order to create an exemption." Although the debtors dispute the intent underlying their move onto the property, they admit that under California law, the timing of events may subordinate their homestead rights to appellee's pre-existing lien. The bankruptcy court reasoned that appellee's lien did not impair an exemption "to which the debtor[s] would have been entitled" *under California law* and concluded that the lien could not be avoided under § 522(f).

■ However, when analyzing § 522(f) lien avoidance problems as a matter of federal law, bankruptcy courts are instructed to "disregard some element of reality" and consider, in the abstract, whether the debtor would be entitled to an exemption under state law if the lien did not exist. The object of this test is to determine whether the actual existence of the lien deprives the debtor of potential property rights which would be available absent the lien; whether the debtor would be entitled to an exemption under state law *"but for the lien itself."* *Owen v. Owen,* 500 U.S. 305, 311, 111 S.Ct. 1833, 1837, 114 L.Ed.2d 350 (1991) (emphasis in original).[4]

---

**2.** The *Mayer* case is factually on point. In *Mayer,* because the creditors' judgment lien attached to the debtor's property before the debtor made it his residence, the creditors objected to the debtor's claimed exemption. A panel of the BAP determined the issue of entitlement to the exemption in the debtor's favor. However, the separate issue of avoidance of the creditors' lien as impairing the exemption was not presented. The panel noted it was "unfortunate" that the issue of lien avoidance was not before it.

**3.** The Bankruptcy Reform Act of 1994 resolves this issue through application of a mathematical formula which entitles the debtor to avoid a judgment lien in cases where equity has not yet accrued, overruling *In re Chabot,* 992 F.2d 891 (9th Cir.1993). *See also, In re Amiri,* 184 B.R. 60 (9th Cir. BAP 1995). However, the Act is not applied in cases such as this one, which were filed prior to enactment of the Act on October 22, 1994.

**4.** *Owen* involved circumstances which differ somewhat from those before us, in that the controversy arose over property acquired by the debtor *after* the judgment creditor had recorded her lien. At the time the debtor acquired the property, the state law did not entitle him to claim a homestead. A subsequent change in state law allowed the debtor to claim a homestead, but the state courts determined that the new exemption was not available retroactively to defeat pre-existing liens.

After ruling that federal law preempts state laws which tailor homestead rights to deprive debtors of homestead protection from pre-existing liens, the *Owen* court remanded for determination of whether the creditor's pre-existing lien had fixed "on an interest of the debtor" under state law. This conceptually abstract question does not confront us in the instant case.

For an enlightening review of the historical development of § 522(f), and a vigorous critique of *Owen* and its sister case, *Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), *see* C. Robert Morris, *Bankruptcy Fantasy: The Site of Missing Words and the Order of Illusory Events,* 45 ARKANSAS LAW REVIEW, 265 (1992).

In any event, *Owen* can be said to apply a plain language analysis to the legislative history of § 522(f): "The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien...." H.R.Rep. No. 595, 95th Cong., 1st Sess. 362 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5963, 6318.

Although under California law the debtors' property would not be "homestead" property as to appellee's pre-existing lien, the debtors owned the property prior to the recording— and the fixing—of the lien, and therefore the lien clearly fixed on "an interest of the debtor in property." Since a pre-existing lien is superior to the automatic homestead it was fixed on an interest of the debtors, thereby meeting the standard stated by *Owen.*

If appellee's lien were not fixed on the debtors' property on the date they moved onto it, the debtors would have had a property interest which they could claim as exempt—$75,000 of potential equity in their residence. The lien therefore impairs the exemption and may be avoided.

■ To determine whether and to what extent appellant's lien actually impairs the debtors' homestead exemption, and is therefore avoidable, requires a valuation of the property. The court made no findings in this regard, resolving the issue solely on the preemptive basis of the California statute. We will therefore vacate the order and remand, for the court to make a valuation of the property for the purpose of determining the extent of or necessity for avoiding the lien. The lien should be avoided as to the first $75,000 of equity available after satisfaction of any prior recorded consensual liens.

## CONCLUSION

Since under California law, the debtors could not prevent execution on their residence to satisfy appellee's lien, "to the extent" that sufficient equity does not exist to satisfy both appellee's lien and the debtors' homestead exemption, the lien impairs an exemption "to which the debtor[s] would have been entitled." The order denying the debtors' motion to avoid the lien is VACATED. These proceedings are REMANDED for valuation of the subject property.