In re Russell L. GOODALE, Debtor.

No. 03–13525.

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

July 25, 2003.

Sheila M. O'Sullivan, David, Leen & Associates, PLLC, Seattle, WA, for Debtor.

Martin E. Snodgrass, Snodgrass & Warren, Inc., P.S., Everett, WA, for Mitchell Foshay.

## MEMORANDUM DECISION ON MOTION TO AVOID LIEN

KAREN A. OVERSTREET,
Bankruptcy Judge.

### BACKGROUND

This matter came before the Court on the debtor's motion under Bankruptcy

Code § 522(f) [1] to avoid the judicial lien held by Mitchell Foshay against the debtor's residence located at 5452, 32nd Ave. S.W., Seattle, Washington (the "Real Property"). Mr. Foshay objected to the motion and the matter was argued on June 13, 2003. The Court permitted supplemental briefing subsequent to the hearing. There are no disputed issues of material fact; therefore the Court may resolve the debtor's motion as a matter of law.

## JURISDICTION

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 157, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K).

## FACTS

The facts are undisputed. The debtor, Russell Goodale, began living with Mr. Foshay in a homosexual relationship in 1982. That relationship ended in approximately July of 2000. In January of 2001, the debtor commenced an action in King County Superior Court to partition and distribute the joint property the parties had accumulated during their 18 year relationship. In October 2002, after a trial, the Superior Court (hereinafter referred to as the "State Court") entered its Findings of Fact and Conclusions of Law and Decree of Equitable Distribution. The Decree makes a specific finding that the "parties [Mr. Goodale and Mr. Foshay] constituted a meretricious relationship within the meaning of *Connell v. Francisco*, 127 Wash.2d 339, 898 P.2d 831 (1995) ... and *In re Pennington*, 142 Wash.2d 592, 14 P.3d 764 (2000)." Decree at p. 4, Para. II.2.

The Decree provides for an equitable division of the property acquired by Messers. Goodale and Foshay during their relationship. In making the distribution, the State Court determined which properties would be considered "joint" or "separate" property under Washington State community property law. As to each item of personal property, the State Court assigned a certain percentage interest to each of the parties, valued that interest, and awarded the respective interests to each party. In connection with the specific awards of personal property, the State Court ordered the debtor to pay Mr. Foshay the sum of $78,793.58 with interest at 4.75% per annum, payable at $750 per month until paid in full. That amount included an award for Mr. Foshay's community property interest in a pension and a 401k fund in the debtor's name. To that amount, the State Court also added $5,247.72 (representing one-half of the amount of a certificate of deposit) and $7,500 (representing attorneys' fees and discovery sanctions awarded to Mr. Foshay). The total amount of the judgment entered in Mr. Foshay's favor was therefore $91,721.30 plus interest (the "Judgment").

As to the $78,793.58 award, the State Court stated:

[T]he court hereby clarifies for any bankruptcy court, that the above award is also necessary for [Mr. Foshay's] support and care and further reflects [Mr. Foshay's] joint interest in the 401k and pension titled in Respondent's [Mr. Foshay's] [2] name, but accrued jointly under Washington law. As such, the court

---

**1.** Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

**2.** Although the State Court refers in this paragraph to the 401k as being titled in Mr. Foshay's name, the findings of fact indicate that the 401k was actually titled in the debtor's name.

intends such debt to be nondischargeable in bankruptcy.

Decree at p. 6, para. 12.

The State Court ordered the debtor to refinance the Real Property and pay Mr. Foshay no less than $27,500, the amount the State Court calculated as one-half of the net value of the property. Alternatively, if the debtor failed to refinance the Real Property, the Decree requires that the property be sold and the proceeds split between the parties. In so ordering, the State Court left intact the parties' one-half interests in the Real Property as tenants in common. As of the petition date in this case, the Real Property had not been sold or refinanced and the Judgment was a lien against the debtor's one-half interest in that property.

The debtor filed this case on March 18, 2003. He claimed a homestead exemption in his one-half interest in the Real Property pursuant to the Washington State Homestead Act, RCW 6.13.030. His entitlement to that exemption has not been challenged. The debtor seeks to avoid the lien securing the Judgment under Section 522(f) of the Bankruptcy Code.

## DISCUSSION

■ In order to avoid a lien under Section 522(f), the debtor must prove each of the following: (1) the lien must have fixed on an interest of the debtor in property; (2) the lien must impair an exemption to which the debtor "would have been entitled …"; and (3) the lien must be a judicial lien,[3] other than one that secures a debt "(i) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child." 11 U.S.C. § 522(f). For the following reasons, the Court concludes that

the debtor has met his burden of proving each of these elements.

### A. Did Mr. Foshay's Lien Fix on an Interest of the Debtor in Property?

■ Relying on the United States Supreme Court's decision in *Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), Mr. Foshay argues that because the debtor did not have an interest in the Real Property to which the lien could attach *before* the lien actually attached, the lien is not avoidable. He further bases his argument on Washington law, which holds that property acquired during a meretricious relationship is presumed to be owned by both parties, even if title is held in only one party's name, and is subject to a just and equitable distribution by the state court. *Connell v. Francisco,* 127 Wash.2d 339, 898 P.2d 831 (1995). He argues that the modifiable, joint interests the parties had in the Real Property before the entry of the Decree were different interests than the 50–50, unmodifiable interests they had in the Real Property after the entry of the Decree. Therefore, the lien of the Judgment attached not to the debtor's pre-existing interest in the Real Property, but instead to a new, unmodifiable, fee simple interest created by the Decree.

In *Farrey,* the Supreme Court held that under Wisconsin law, the joint tenancy of the divorcing parties in their real property was entirely extinguished by the divorce decree, which then created a "wholly new fee simple interest" in favor of the debtor. The Court went on to hold that because the debtor did not have that new fee simple interest prior to the time at which the

---

**3.** Neither party disputes that the lien securing the Judgment is a judicial lien, so that question need not be addressed.

lien of Farrey (the nondebtor ex-spouse) attached, the debtor could not avoid the lien under Section 522(f). The lien attached, according to the Supreme Court, simultaneously with the creation of the debtor's new fee simple interest. *Farrey*, 111 S.Ct. at 1831. In *Connell, supra*, the Washington State Supreme Court held that there is a presumption that property acquired during a meretricious relationship is owned by both parties such that it can be treated like community property and equitably divided by the court.[4]

■ *Farrey* and *Connell* are distinguishable from this case. In this case, Mr. Foshay and the debtor purchased the Real Property as tenants in common, in both of their names. Under Washington State law, "[t]he essential attribute of a tenancy in common is unity of possession; titles are separate and distinct, and each tenant owns a separate estate." *Falaschi v. Yowell*, 24 Wash.App. 506, 509, 601 P.2d 989 (1979). *See also* RCW 64.28.010, 64.28.040. More importantly, unlike in *Farrey*, the State Court made no change in the ownership of the Real Property. On the contrary, the Decree reaffirms that the parties continue to hold the property as tenants in common with equal interests in the property. The debtor does not seek to avoid Mr. Foshay's ownership interest in the Real Property; Mr. Foshay still has that interest. The Judgment did not become a lien against the Real Property because the State Court so ordered; it became a lien against the Real Property because Mr. Foshay recorded the Judg-

ment in the County where the property was located, and it, like any other judgment, became a lien against the property. Under *Connell*, the State Court could have awarded 100% of the Real Property to the debtor and granted an equalizing lien to Mr. Foshay for his one-half interest in the property. The State Court chose not to do that.

Prior to the Decree, the debtor had a one-half interest in the Real Property as a tenant in common. The lien of the Judgment fixed on that interest after the Decree was entered and the Judgment was recorded. Accordingly, I find that the debtor has met the first requirement of Section 522(f).

## B. Would the Debtor Have Been Entitled to a Homestead Exemption in the Real Property?

■ The debtor must also demonstrate that the Judgment lien impairs an exemption to which he would have been entitled. Courts disagreed as to how to apply this particular element of Section 522(f) until the Supreme Court clarified the confusion in 1991. The Ninth Circuit Bankruptcy Appellate Panel has described the test articulated by the Supreme Court as follows:

> The object of this test is to determine whether the actual existence of the lien deprives the debtor of potential property rights which would be available absent the lien; whether the debtor would be entitled to an exemption under state law "but for the lien itself."

4. For purposes of this opinion, this Court does not question whether the Washington Supreme Court would also hold that same-sex partners can be treated in the same manner as heterosexual couples in a meretricious relationship, as was the case in *Connell*. In this case, the State Court made a specific finding that the parties were in a meretricious relationship and that finding is binding on this

Court. It does not appear that the appellate courts in Washington have directly addressed this issue. *See, e.g., Vasquez v. Hawthorne*, 145 Wash.2d 103, 33 P.3d 735 (2001)(holding that claims to property between same-sex partners should be treated as equitable claims without addressing whether parties can be deemed to be in a meretricious relationship).

*Hastings v. Holmes,* 185 B.R. 811, 814 (9th Cir. BAP 1995), (quoting *Owen v. Owen,* 500 U.S. 305, 311, 111 S.Ct. 1833, 1837, 114 L.Ed.2d 350 (1991)).

■ In this case, because the debtor has selected the Washington State exemptions, Washington law governs whether the debtor's homestead would be protected against the Judgment if no lien securing the Judgment existed. Mr. Foshay argues that the homestead exemption is not available to the debtor because the Judgment represents a debt secured by a lien in the nature of an owelty or "vendor's" lien. He relies on the language of RCW 6.13.080, which provides as follows:

> The Homestead exemption is not available against an execution or forced sale in satisfaction of judgments obtained: (1) On debts secured by mechanic's, laborer's, construction, maritime, automobile repair, materialmen's or *vendor's liens arising out of and against the particular property claimed as a homestead* ... (emphasis added).

The debtor counters that the Judgment is not secured by an owelty or vendor's lien because the debt does not arise from a sale or transfer of Mr. Foshay's interest in the Real Property to the debtor. Instead, the Judgment secures what the State Court determined to be Mr. Foshay's "community property" interest in *personal* property Mr. Foshay and the debtor acquired during their relationship.

Both parties cite *In re Stone,* 119 B.R. 222 (Bankr.E.D.Wash.1990). In that case, the bankruptcy court addressed three separate cases presenting the same issue: whether a debtor, using the power under Section 522(f)(1), may "avoid liens awarded

to the debtor's former spouse to secure a property division in the course of a marital dissolution." *Id.* at 223. The court in the *Stone* case thoughtfully and thoroughly analyzed Washington State law as it pertains to owelty and vendor's liens. The court correctly concluded that Washington courts have historically treated a lien awarded in a dissolution proceeding to equalize distribution of jointly held or community property as an owelty/vendor's lien.[5] *Id.* at 231. In particular, the court relied on *Hartley v. Liberty Park Assoc.,* 54 Wash.App. 434, 438, 774 P.2d 40 (1989), in which the state court held:

> A sum of money paid in the case of partition of unequal proportions for the purpose of equalizing the portions is an owelty, and may be allowed as a lien on the excessive allotment if payment cannot be made at once. (citations omitted). *A judgment for owelty is an equitable lien in the nature of a vendor's lien, which will prevail over a declaration of homestead.* (citations omitted) (emphasis added).

*Stone,* at 231. In *Stone,* the court concluded that two of the liens at issue were vendor's liens within the meaning of the state statute cited above and that the liens of the ex-spouses did not impair the debtors' homestead exemptions because "[t]he homestead is subject to levy in satisfaction for these debts with or without these liens." *Stone,* at 235.[6]

The critical question in this case is whether Mr. Foshay's Judgment qualifies for the exception in RCW 6.13.080(1) as a vendor's lien. Clearly, the Judgment was not awarded by the State Court on account of a transfer by Mr. Foshay of his interest

5. These liens have also become known generally as "equalizing liens."

6. The Supreme Court had not decided the *Owen* case when the *Stone* decision was issued. The *Stone* court discussed the split of authority among the circuits and applied the rule that was subsequently articulated in *Owen.*

in the Real Property to the debtor. There was no such transfer. The Decree makes it clear that the Judgment related only to the personal property interests (described on pages 888–889, *supra*) to which Mr. Foshay was entitled.

There is no Washington case directly addressing this issue. The language of RCW 6.13.080(1), which refers to a "vendor" and requires that the debt at issue "arise out of and against the particular property claimed as a homestead,"[7] supports the debtor's contention that the lien of the Judgment is not an owelty or vendor's lien within the meaning of the statute. The word "vendor" refers to a person who has transferred something. Washington case law also appears to be on the debtor's side. For example, in *Washburn v. Central Premix Concrete Co.,* 98 Wash.2d 311, 654 P.2d 700 (1982), the Washington Supreme Court reviewed the history of vendor's liens and quoted the opinion in *Lyon v. Herboth,* 133 Wash. 15, 233 P. 24 (1925) as follows:

> It seems to us plain that the legislature intended that it should be the public policy of this state that no one should be permitted to hold a homestead as against the person from whom he had purchased and to whom he had not paid the purchase money.

*Washburn,* 98 Wash.2d 311, 314, 654 P.2d 700. Critical to the court's decision that the creditors seeking to enforce their lien were entitled to assert a vendor's lien against the debtors' homestead, were findings that (i) the creditors had an interest in the real estate (a contract vendee's interest), (ii) they transferred that interest to the debtors, and (iii) the judgment they

obtained secured the unpaid portion of the purchase price that the debtors agreed to pay. *See also Adams v. Rowe,* 39 Wash.2d 446, 236 P.2d 355 (1951)(involving a partition action).

It is not clear from those Washington cases where the effect of an equalizing lien was at issue whether the lien also was intended to secure an interest in personal property that the lienholder had given up in the divorce process. No Washington case directly addresses whether a lien granted against real property in a divorce solely to equalize the parties' personal property interests would meet the definition of a vendor's lien for purposes of the Washington Homestead Act. *See, e.g., Stone, supra, In the Matter of Foley,* 84 Wash.App. 839, 930 P.2d 929 (1997); *Hartley v. Liberty Park Assoc.,* 54 Wash.App. 434, 774 P.2d 40 (1989).

The Washington case most like this case is *Philbrick v. Andrews,* 8 Wash. 7, 35 P. 358 (1894), upon which cases like *Foley* and *Hartley* rely. The court in *Philbrick* stated, with respect to land that the parties had owned as a married couple:

> There is no question but that the court had power in the divorce action to award the half belonging to the defendant, or any part of it, to the plaintiff, or to render a judgment for a sum of money, and make it a specific lien thereon which would take precedence of a homestead exemption. But to do either it was necessary that the property should have been brought before the court.

*Philbrick,* 8 Wash. at 8, 35 P. 358.[8] In that case, the divorce court had not made any

---

7. This language was added to the statute in 1993. 1993 Wash. Legis. Serv. Ch. 200 (West). The cases cited herein all concerned the application of the prior language which concluded in Section (1) with "... vendor's liens upon the premises."

8. Although one aspect of the *Philbrick* court's holding (as to the creation of the homestead) was superceded by a subsequent version of the homestead statute, *Hookway v. Thompson,* 56 Wash. 57, 105 P. 153 (1909), the court's

division of the real property at issue and had awarded a judgment to the ex-wife solely for alimony. The Washington Supreme Court held that this judgment did not take precedence over the homestead exemption claimed by the ex-husband in the property. The court acknowledged that the alimony judgment could become a lien on the real property after recording or an execution levy, but in either of those events the ex-husband's "right to a homestead exemption would be a paramount claim." *Id.* at 9, 35 P. 358.

■ Of course, the court in *Philbrick* was construing a prior version of the current Washington homestead statute. But, the case supports the proposition that to prime the homestead exemption, the lien granted must be compensation for an interest in real property that is transferred, or at a minimum, that the divorce court must refer to the judgment as a lien against specific real property. In this case, the Judgment was not granted as compensation to Mr. Foshay for his interest in the Real Property nor did the State Court order that the Judgment was to be a lien against the Real Property. Instead, like the lien at issue in *Philbrick,* the Judgment lien arose because it was recorded in the county where the Real Property is located.

Based upon the Washington authorities cited and because of the very specific language of RCW 6.13.080(1), this Court concludes that Mr. Foshay does not hold a debt secured by a vendor's lien. Therefore, under *Owen,* but for the existence of the lien securing the Judgment, the debtor would be entitled to his homestead exemp-

tion. The debtor has met the second element under Section 522(f).

## C. Is the Judgment Owed to a Spouse for Maintenance?

■ The final element under Section 522(f) to be examined here is whether all or part of the amount of the Judgment falls into the spousal support exception in Section 522(f)(1)(A)(i), which prevents avoidance of a lien securing a debt "to a spouse, former spouse ... for alimony to, maintenance for, or support of such spouse ..." [9] Mr. Foshay relies on the following finding by the State Court in asserting that his lien may not be avoided because it qualifies for this exception:

> The court has not been asked to and has not awarded maintenance. However, the court hereby clarifies for any bankruptcy court, that the above award is also necessary for Respondent's [Foshay's] support and care....

Decree, p. 6, para. 12. The debtor argues that because Mr. Foshay is not a "spouse" under federal bankruptcy law, he does not qualify for the exception in Section 522(f)(1)(A)(i). This Court agrees.

In interpreting Section 522(f), the Court must apply federal law. The Defense of Marriage Act, 1 U.S.C. § 7, provides that "[i]n determining the meaning of any Act of Congress ... the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife." Accordingly, Mr. Foshay cannot be a "spouse" for purposes of applying the exception in Section 522(f). Because the "support" referred to in Section 522(f)(1)(A)(i) must be owed to a spouse, he cannot qualify under that sec-

holding as to the priority of a vendor's lien has remained intact.

9. The parties both briefed the question of whether the Judgment is nondischargeable under Bankruptcy Code § 523(a)(5). Although the language of Section 522(f)(1)(A)(i)

mirrors the language in Section 523(a)(5), a finding of nondischargeability is not necessary to the application of Section 522(f). The dischargeability of the Judgment is not at issue here.

tion. The debtor has met the third and final element under Section 522(f).

## CONCLUSION

For the foregoing reasons, the debtor has met all of the requirements under Section 522(f) and may avoid the lien of the Judgment according to the mathematical formula in Section 522(f)(2).