# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THOMAS BARTH and SANDRA BARTH, husband and wife, ) ) ) | No. 72049-0-I |
| Respondents/Cross-Appellants, ) ) | DIVISION ONE |
| v. ) ) | UNPUBLISHED OPINION |
| PATRICK D. HAFEY and GINA LORAE HAFEY, husband and wife, and their marital community, ) ) ) ) | |
| Defendants, ) ) | |
| and ) ) | |
| AMERICAN PENSION SERVICES, INC., ) ) ) | |
| Appellant/Cross-Respondent. ) | FILED: August 3, 2015 |

TRICKEY, J. — An owelty lien, also referred to as an equalizing lien, is narrower in scope than a general judgment lien. Unlike a general judgment lien, a judgment for owelty secures a debt by creating a lien on a specific property.

Here, in a dissolution proceeding not currently before us, Patrick Hafey's former spouse, Tammy Hafey, was awarded an owelty lien that attached to their former family home. Tammy[1] later assigned her interest in the lien to American Pension Services, Inc. (American). In this partition action now before us, between cotenants Patrick and his sister, Sandra Barth, the parties challenge the trial court's order of disbursement of sale of property that Patrick and Sandra had inherited.

The trial court's order of disbursement of sale proceeds found that American's

---

[1] For ease of reference, we refer to the parties by their first names. No disrespect is intended.

owelty lien attached to Patrick's one-half interest in the property. Because the owelty lien attached only to Patrick's former family home, and not to the property at issue in this separate partition action, we accept the Barths' position on cross-appeal that the trial court erred. Accordingly, we reverse the trial court's order and remand to amend the order consistent with this opinion. On all other grounds, we affirm.

## FACTS

In September 2002, siblings Patrick and Sandra acquired title to their mother's residence (the Property) located in Everett, Washington as tenants in common.

In July 2009, Patrick and his wife, Tammy, dissolved their marriage. As part of the dissolution decree, Tammy obtained an owelty lien against Patrick in the amount of $150,000 to equalize distribution of their former family home that had been awarded to Patrick. On October 14, 2009, Tammy assigned her interest in the owelty lien to American.

Patrick's sister, Sandra, resides in Minnesota with her husband, Thomas (collectively, the Barths). After inheriting the Property, Patrick and Sandra agreed to allow their mother's boyfriend, Bob Hysong, to live at the Property so long as he maintained the Property in good condition and paid property taxes and insurance. He did so until his death in February 2009.

In 2009, following the death of Hysong, the Barths traveled to Washington to settle the affairs and issues with the Property. The Barths entered into an agreement with Patrick in which Patrick would be permitted to live at the Property on the condition that he pay the Barths $700 per month in rent. Patrick resided at the Property for five months,

between March and July 2009, while he was going through the divorce with Tammy. Patrick then leased the Property to another person between August and October 2009.

On or around November 2009, Patrick's son, Andrew Hafey, moved into the Property. Patrick did not consult with the Barths before Andrew moved in, and the Barths did not give permission for Andrew to live there. The Barths received no rent payments from Patrick or Andrew.

During this time, Patrick stopped responding to the Barths' efforts to communicate with him regarding how the Property would be managed and whether to lease or sell the Property. Thomas sent two registered letters to Patrick to which Patrick did not respond. From that point on, the Barths were excluded from any participation in the management of the Property.

In September 2011, the Barths traveled to Washington. They spoke with Andrew while visiting the Property. Andrew told them he was living there. After numerous unanswered telephone calls to Patrick's residence, the Barths went to Patrick's residence to discuss the Property's management. Patrick was angry with the Barths and refused to discuss the subject matter with them. In May 2012, the Barths discovered that the property taxes for the Property had not been paid and that the Property had been not insured. They sent a letter to Patrick in an effort to resolve this problem, but received no response.

The Barths filed a complaint against Patrick and Gina Hafey (another former wife of Patrick) on August 31, 2012, for partition and ejectment. In November 2012, upon stipulation by the parties, the trial court entered an order joining American as an additional

defendant. American claimed an owelty lien interest against Patrick's one-half interest in the Property.

On May 29, 2013, the trial court entered an order of default and default judgment against Patrick. The order authorized the issuance of a writ of assistance/ejectment. On June 20, 2013, during the execution of the writ, it became apparent that Patrick had recently vacated the Property. The Barths gained possession and access to the Property that day.

The Barths soon discovered the Property had been neglected and was in extremely poor condition. In July and August 2013, the Barths worked diligently to make significant and critical repairs and improvements to prepare the Property to be sold. An experienced real estate broker stated in a declaration that the repair and improvement work completed by the Barths enhanced the value of the Property by $53,700.

In August 2013, the trial court entered an order dismissing defendant Gina from the case. Additionally, according to the Barths' motion for disbursement of sale, on August 21, 2013, the trial court issued an order setting the terms of sale of the Property subject to the partition action. The order authorized a private sale of the Property through a real estate agent and set terms of the sale as the mechanism to terminate the tenancy in common.

The Property sold in November 2013 for $246,200. The sale proceeds, after court authorized deductions, amounted to $219,348.07, and were placed in the court registry.

The Barths filed a motion for disbursement of sale proceeds on May 12, 2014. They argued that the owelty lien "is more limited in scope than a general judgment lien

and does not attach to the half interest of Defendant Hafey in the property."[2] The Barths contended that even if the owelty lien did attach to Patrick's one-half interest, it was subordinate and lower in priority to the claims and offsets on the interests asserted by the Barths.

On May 20, 2014, the trial court entered an order disbursing the sale proceeds. The court agreed with the Barths that the owelty lien was limited in scope and ruled that the lien did not attach to Patrick's one-half interest in the Property. Even if it did attach, the court ruled, it was lower in priority and subordinate to the Barths' claims and offsets. The court ordered Patrick to reimburse the Barths the amount of $52,327.29 of his one-half share in the Property. This sum included (1) one-half of the Barths' attorney fees and costs, (2) one-half of the sums paid by the Barths for property taxes and insurance, and (3) one-half of the reasonable rental value of the Property from November 2009 through June 30, 2013. The trial court also awarded the Barths the enhanced value of the Property resulting from the Barths' time and labor expended in repairing and improving the Property.

The Barths' total reimbursements and offsets were $106,027.29, all of which were to be distributed to the Barths out of Patrick's one-half share in the sale proceeds. This left a balance of $3,646.74 as Patrick's one-half share in the sale proceeds. In all, the Barths were awarded $180,282.01, Patrick was awarded $3,646.74, and the Barths' attorney was awarded $35,419.32.

Two days later, the trial court amended the judgment to award the sum of $3,646.75 to American instead of Patrick. The court decided that the owelty lien claimed

---

[2] Clerk's Papers (CP) at 119.

by American *did* attach to the one-half interest of Patrick, but that it was subordinate and lower in priority to the Barths' claims and offsets on Patrick's one-half interest.

American appeals the trial court's orders disbursing the sale of proceeds; the Barths cross-appeal.[3]

ANALYSIS

American first contends that the trial court erred because it ruled that the owelty lien was subordinate to the Barths' claims of offsets and reimbursements against Patrick's one-half interest in the Property. We disagree.

A partition action is an equitable one wherein the court has great flexibility in fashioning appropriate relief for the parties. Friend v. Friend, 92 Wn. App. 799, 803, 964 P.2d 1219 (1998); Cummings v. Anderson, 94 Wn.2d 135, 143, 614 P.2d 1283 (1980). A court has broad power respecting liens against real property to provide equitable remedies. McKnight v. Basilides, 19 Wn.2d 391, 408, 143 P.2d 307 (1943); see MGIC Financial Corp. v. H.A. Briggs Co., 24 Wn. App. 1, 6, 600 P.2d 573 (1979). We review an equitable remedy for abuse of discretion. In re Foreclosure of Liens, 123 Wn.2d 197, 204, 867 P.2d 605 (1994). "'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'" In re Marriage of

---

[3] In its opening brief, American submits an appendix to summarize how the sale proceeds were disbursed. The Barths contend that the appendix should be stricken under RAP 10.3(a)(8) because the appendix includes materials not contained in the record on review. The appendix contains an item labeled "Costs of Fix Up" in addition to "Enhancement Value." Br. of Appellant at 15. "Costs of Fix Up" were not identified as such in the record. Moreover, the appendix indicates that the enhancement value of $53,700 was divided in half between the Barths and American. In fact, American was charged with the full amount of the enhancement value. RAP 10.3(a)(8) prohibits a party from submitting an appendix that includes "materials not contained in the record on review." Accordingly, we agree to strike American's appendix.

Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005) (quoting In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)).

RCW 7.52.220 provides authority for the distribution of sale proceeds in a partition by sale:

> The proceeds of the sale of the encumbered property shall be distributed by the decree of the court, as follows:
>
> (1) To pay its just proportion of the general costs of the suit.
>
> (2) To pay the costs of the reference.
>
> (3) To satisfy the several liens in their order of priority, by payment of the sums due, and to become due, according to the decree.
>
> (4) The residue among the owners of the property sold, according to their respective shares.

"[A] court in the exercise of its equitable powers may fashion remedies to address the particular facts of each case, even if the partition statute does not strictly provide for such a remedy." Kelsey v. Kelsey, 179 Wn. App. 360, 369, 317 P.3d 1096, review denied, 180 Wn.2d 1017, 327 P.3d 54 (2014) and cert. denied, 135 S. Ct. 451, 190 L. Ed. 2d 330 (2014). Thus, "[w]hile the statutory provision provides guidance to a court in a partition action, it does not mark the outer limits of a court's exercise of its equitable powers." Kelsey, 179 Wn. App. at 368.

The trial court here properly exercised its broad equitable powers in finding that American's claims to Patrick's one-half interest in the proceeds were subordinate to the Barths' claims. Patrick was exclusively in control of the Property for 44 months, benefited from possession, and left the Property in total disrepair. To compensate the Barths for Patrick's actions, the trial court fashioned an equitable remedy of reimbursing the Barths for (1) the enhanced value of the Property resulting from the Barths' improvements to the

7

Property, (2) the reasonable rental value of Patrick's ongoing possession of the Property, (3) property taxes and insurance, and (4) attorney fees incurred in litigating the action. The trial court did not abuse its discretion in finding the Barths' offsets were superior to American's owelty claim.

Next, American challenges the trial court's award to the Barths of one-half the reasonable rental value of $30,653.63 during the time period of November 2009 (the time Andrew moved into the Property) through June 20, 2013 (the time of Patrick's court-authorized ejectment). We reject American's contention.

In Cummings v. Anderson, our Supreme Court stated:

> It is the rule in Washington that, in the absence of an agreement to pay rent, or limiting or assigning rights of occupancy, a cotenant in possession who has not ousted or actively excluded the cotenant is not liable for rent based upon his occupancy of the premises. In order for ouster to exist, there must be an assertion of a right to exclusive possession.

94 Wn.2d 135, 145, 614 P.2d 1283 (1980) (internal citations omitted). As an equitable remedy, a cotenant is entitled to reasonable rental value of the time period during which the other tenant effects an ouster. See Yakavonis v. Tilton, 93 Wn. App. 304, 309, 968 P.2d 908 (1998).

Here, the evidence indicates that through his words and acts, Patrick excluded the Barths from possession of the Property. Patrick ceased communication with the Barths and rejected their attempts to discuss the future plans for the Property. When the Barths traveled from Minnesota to Washington to speak with Patrick in person about the Property, Patrick refused to discuss the Property with them. The trial court did not err in charging Patrick one-half of the reasonable rental value of the period of ouster.

8

American next challenges the trial court's award to the Barths the enhanced value of the Property resulting from their efforts in repairing and improving it. Again, we disagree.

It is well established law in Washington "that improvements placed upon the property by one cotenant cannot be charged against the other cotenant unless they were either necessary or actually enhanced the value of the property." Cummings, 94 Wn.2d at 144; see also Kelsey, 179 Wn. App. at 365 ("If one cotenant improves property, the trial court has discretion to reimburse him or her for the improvement values.").

Here, the Barths presented evidence establishing that their investment of time and money enhanced the value of the Property by $53,700. The Property was in total disrepair when the Barths repossessed it. Prior to the Barths' repairs and improvements, the Property was valued at $192,500; after the repairs and improvements, the Property was sold for $246,200. The trial court was well within its discretion in awarding the Barths the full enhancement value of the Property.

The Barths argue on cross-appeal that the trial court erroneously permitted American's owelty lien to attach to Patrick's one-half interest in the Property. The trial court is afforded wide discretion in fashioning equitable remedies. However, Washington case law holds that owelty liens are more limited in scope than judgment liens, and attach only to property at issue in the partition, which, in this case, was the former family home. Accordingly, we hold that the trial court erred.

When property cannot be fairly divided in a partition action, the trial court may adjudge compensation to be made by one party to another. RCW 7.52.440; In re Marriage of Wintermute, 70 Wn. App. 741, 745, 855 P.2d 1186 (1993). A judgment for

owelty secures the debt by creating an equitable lien on the property at issue. Wintermute, 70 Wn. App. at 745.

Here, as part of Tammy and Patrick's 2009 dissolution decree, Patrick was awarded the former family home. Tammy was awarded an owelty lien to equalize this division of property. Under the decree, Tammy's right to payment of the equalizing lien was secured by a promissory note and a deed of trust. Under the promissory note, Patrick promised to pay Tammy the sum of $150,000 within 24 months of entry of the decree of dissolution or upon the sale or refinance of the former family home. Tammy assigned her interest to American. According to American, thereafter, Patrick failed to make his judgment payments and the mortgages on the former family home were foreclosed. Out of the foreclosure sale proceeds, American collected $44,253.

American relies on RCW 4.56.190, which states in part: "The real estate of any judgment debtor, and such as the judgment debtor may acquire, not exempt by law, shall be held and bound to satisfy any judgment of the . . . superior court." American argues that any real estate owned by the judgment debtor—including the property at issue here— is subject to attachment by its owelty lien.

But the owelty lien in this case is distinguishable from a general judgment lien in that it only attached to the former family home, not to the Property, or any other property owned by Patrick. "The owelty lien is like a vendor's lien in that it attaches to a particular piece of real property to assure payment of a debt related to that property." Wintermute, 70 Wn. App. at 745. "By attaching to a particular piece of real property to secure an equalizing award of money, an owelty lien is significantly more focused and limited in

10

scope than a general judgment lien. It is a compensating device tailored by the court or the parties to address a specific situation." Wintermute, 70 Wn. App. at 745-46.

American's reliance on Hartley v. Liberty Park Associates, 54 Wn. App. 434, 774 P.2d 40 (1989), is unavailing for similar reasons. There, a dissolution decree awarded the wife the family home and the husband an equalizing lien on the home in the amount of $40,000. Hartley, 54 Wn. App. at 435. The Court of Appeals affirmed the trial court's determination that the husband's owelty lien attached to the property and was superior to all other liens on the home. Hartley, 54 Wn. App. at 435. Contrary to American's assertion, the facts in Hartley are not analogous to those here. Here, the owelty lien attached to the former family home, not to the Property owned by Patrick and Tammy. Indeed, American already has collected proceeds from the foreclosure of the former family home as a result of the owelty lien that attached to it.

The trial court in a partition action is conferred broad power in crafting equitable remedies. But the trial court's determination that the Property was subject to American's owelty lien was an abuse of that discretion.

The parties request attorney fees on appeal. Both rely on the same statute, RCW 7.52.480, as authority for such fees. That statute provides:

> The cost of partition, including fees of referees and other disbursements including reasonable attorney fees to be fixed by the court and in case the land is ordered sold, costs of an abstract of title, shall be paid by the parties respectively entitled to share in the lands divided, in proportion to their respective interests therein, and may be included and specified in the decree. In that case there shall be a lien on the several shares, and the decree may be enforced by execution against the parties separately. When, however, a litigation arises between some of the parties only, the court may require the expense of such litigation to be paid by the parties thereto, or any of them.

RCW 7.52.480. Because the Barths prevail on appeal, they are entitled to attorney fees.

We reverse the trial court's order of disbursement and remand to the trial court to amend the order consistent with this opinion. On all other grounds, we affirm.

Trickey, J

WE CONCUR:

Spearman, C.J.

Cox, J.